HENRIETTA KUCHLIK, an Infant, by ISADORE KUCHLIK, Her Guardian ad Litem, and Another, Respondents, v. MILTON FEUER, an Infant over the Age of Fourteen Years, and Another, Appellants, Impleaded with PEARL FEUER, Defendant.

First Department, November 3, 1933.

*Harold R. Medina* of counsel [*Eugene A. Sherpick* and *John W. Jordan* with him on the brief; *Morris Permut*, attorney for the appellant Milton Feuer, an infant; *Nathan Permut*, attorney for the appellant Morris Feuer].

*Jay Leo Rothschild* of counsel [*Walter S. Beck* with him on the brief; *Jay Leo Rothschild*, attorney], for the respondents.

TOWNLEY, J. This is an action on behalf of a fourteen-year-old infant against the two defendants for damages resulting from the negligent operation by the infant defendant of an air rifle. The liability charged was, *first*, that the defendant Morris Feuer had given his son Milton a gun, and, *second*, that the defendant Morris Feuer was negligent in that he permitted his infant son to possess and operate the air rifle. There is no evidence to support the allegation that the air rifle had been given by the father to the son. The court found on the evidence that the gun belonged to the boy and that his parents knew he was using it. The father was held on the ground that his " negligence made it possible for the child to cause the injury complained of and probable that the child would do so." The court found that the mother also was

chargeable with knowledge but no judgment was given against her. There is no appeal from that decision.

The accident happened on March 4, 1932, at nine o'clock in the evening. The plaintiff, while walking on the street, had been struck in the calf of the leg by a BB shot fired by the infant defendant. The boy companion of the plaintiff seized an air rifle belonging to a child by the name of Jacobs and pursued the defendant into a vacant lot where both boys began firing at each other. Plaintiff interfered and her escort stopped shooting. As she turned to speak to the defendant, she was struck by a BB shot fired by him and the sight of one of her eyes was partially destroyed.

The substantial claim upon this appeal is that there is no evidence to support the finding of the trial justice that the father of the infant defendant had knowledge of his possession of the air rifle. Both the father and the mother denied such knowledge. There was, however, in my opinion, ample evidence to support the conclusion of the trial judge that such knowledge existed in the case of both father and mother, and that their denials were false. The father, mother and infant defendant all lived in the upper part of a two-family house in Bronx county. The apartment was a small one of three bedrooms, a living room, dining room and kitchen. The housework was all done by the mother who would naturally know what there was in the house. Both the father and the mother testified that the infant defendant was always truthful and frank with them, that they knew of his toys and belongings, and that he discussed with them any new toys that he had.

The testimony showed that the air rifle had been in the possession of the infant defendant for more than two months prior to the accident. The plaintiff testified that in January, 1932, while visiting the Feuer home, she had seen Milton Feuer, the infant, shooting the air rifle from his bedroom window and that his mother was in an adjoining room. The mother testified that if it had been fired in her bedroom she would have heard it, but denied hearing any report of the gun. It is to be presumed that counsel and witness were referring to the boy's room. In February, 1932, the plaintiff had seen the infant defendant shooting at the globes of the electric street lamps in front of his house. This was confirmed by the record of the electric light company. In March, on two occasions — one, two days before the accident, and the other three days before the accident — the infant was seen by neighbors on the street in front of the house with his air rifle and one of the neighbors testified she had seen him coming out of the house with it in his possession. On the night of the accident he was concededly again on the street with it.

There is much in this record which affords ample justification for the court's refusal to accept the testimony of the father and mother on this subject. The father testified positively that the boy had never had an air rifle. On the hearing in the Police Court which followed the accident, a playmate of the infant defendant, named Kaplan, who was a constant visitor at defendant's house, testified that a few days before the hearing he had seen an air rifle in the possession of the infant defendant in the presence of both the father and the mother. On this trial he attempted to change his testimony in this regard, but when confronted with the minutes of that hearing, admitted that he had said it and that it was true. What influence brought about this attempted change in testimony is a question which might readily occur to a trial judge and the reason for it might throw a flood of light on the amount of credit which might be given to the testimony of the father. The father, although in the hardware business for many years, even testified that he had never heard of BB shot except on one occasion some ten years before when he had seen someone using them to wash a milk bottle. A representative of the Children's Society, O'Donnell, testified that the infant had told him that the gun had been given him by his father. This testimony is of course incompetent as against the father. But it was significant that the infant, when examined, suffered a complete loss of memory with regard to this admission as did a number of other boys called as witnesses in this case.

We think that in view of all this testimony, the trial justice was warranted in disregarding the denials of both the father and the mother. The possession of the gun by the boy was open and notorious in the neighborhood. It was a positively established fact that the gun had been fired off in the apartment under such circumstances that the mother concededly must have heard it. She, therefore, must have had knowledge and her denial is false. The admission also of the father that he knew everything that his son possessed, coupled with the notorious possession of the rifle, is sufficient ground for disregarding his denial. As was stated by the Court of Appeals in *Woloszynowski* v. *New York Central R. R. Co.* (254 N. Y. 206): "Knowledge may be established by circumstantial evidence, in the face even of professions of ignorance."

Plaintiff claims that liability of the father may be predicated on the knowledge of the mother alone even in the absence of actual knowledge by the father. (See *Hawley* v. *Alexander*, 74 Sol. Journ. 247.) We think it unnecessary to pass on this point of law because the evidence equally well establishes the fact of knowledge by the father. The parents were held under very similar circumstances

in the case of *Gudziewski* v. *Stemplesky* (263 Mass. 103). Plaintiff's eye was put out with BB shot. The possession of the gun in the neighborhood was notorious but there was no direct evidence that the defendants had supplied the boy with the gun. The question was whether the defendants or either of them knew or ought to have known that the boy had the gun. The court held that the evidence warranted a finding that both the father and the mother had actual knowledge of the son's possession of the gun and that he had been using it indiscriminately and mischievously. It is true that the court in that case held that the knowledge of the father might be inferred from the proximity of the father's place of business to the street on which the boy had been seen shooting his gun at a shanty and at some birds. In the present case the father's place of business was not in the vicinity but his admission that he was aware of everything that the son possessed in the nature of toys is sufficient from which to deduce knowledge on his part. In spite of his denials, there is persuasive evidence that the gun was in the possession of the boy in the very apartment as late as two months after the accident. Accordingly, it cannot be held as matter of law that there was no evidence on which the trier of the facts could charge the defendant with knowledge that his son Milton was in possession of and was using the air rifle.

The point is made in the dissenting opinion of the court that the testimony of witnesses who saw Milton with " a " gun at various times was never connected so as to establish the fact that it was " the " same gun at all times. This question was not raised by the defense at the trial of the case and is not justified by the record. Both parties tried the case on the tacit assumption that if the trial justice believed the testimony that Milton had " a " gun, it was equivalent to establishing the fact that Milton was in notorious possession of his gun for several months. The trier of the facts was justified in so finding.

The judgment should be affirmed, with costs.

FINCH, P. J., and O'MALLEY, J., concur; MARTIN and GLENNON, JJ., dissent, and vote for reversal and dismissal of the complaint as against defendant Morris Feuer.

GLENNON, J. (dissenting). This is an appeal by defendants Milton and Morris Feuer from a judgment entered in favor of plaintiff after a trial before the court without a jury. Henrietta Kuchlik based her claim upon the alleged negligence of the appellants, whereas Isadore Kuchlik, her father, sought a recovery for the loss of her services.

The defendant Milton Feuer, a boy fifteen years of age, shot the

plaintiff, a girl fourteen years of age, causing severe injury to her right eye. Milton Feuer was properly found chargeable with negligence and Henrietta free from contributory negligence.

At the time of the accident — there is no claim here of an intent to do bodily harm — Milton Feuer had in his possession an air rifle. The accident happened on the evening of March 4, 1932. Henrietta had been playing in Feuer's cellar with several others about her age until about nine o'clock. Shortly thereafter while walking on Manida street, in the county of Bronx, she was shot in the foot by Milton Feuer, who was using a " BB " gun. In company with one Raymond Stromwasser, who obtained a gun from another boy, named Julie Jacobs, she gave chase to Milton. They ran into a lot where Milton and Raymond were firing at each other. While Henrietta was in the act of telling them to stop, a shot from the " BB " gun, which Milton was using, struck her eye.

The father, Morris Feuer, and the mother, Pearl Feuer, were joined as codefendants on the theory that (1) they gave the boy the air rifle and were responsible for the boy's negligence in its use; (2) they were guilty of negligence in knowingly permitting the boy to use a dangerous weapon. If either parent had given Milton an air rifle, the one who had done so would have been guilty of a misdemeanor under section 1896 of the Penal Law, which reads in part as follows: " A person who * * * offers, sells, loans, leases, or gives * * * any airgun, springgun, or other instrument or weapon in which the propelling force is a spring or air or any instrument or weapon commonly known as a toy pistol * * * to any person under the age of sixteen years, is guilty of a misdemeanor."

If one of his parents had given an air gun to Milton and he had used it in a negligent manner, thereby inflicting injury upon an innocent third party, who was in no way negligent, the guilty parent would have to respond in damages for the injuries inflicted. There is no evidence in this record to indicate that either parent had given an air gun to Milton. The judgment was entered against Morris Feuer on the theory that he was guilty of negligence in knowingly permitting the boy to use an air gun. The complaint in so far as it related to the defendant Pearl Feuer, the mother of Milton, was dismissed on the merits.

In this State there are no cases which support the theory that the responsibility should be fixed upon the father for knowingly permitting his child to use a dangerous instrument. Under ordinary conditions, a parent is not liable for the torts of a child. If the parent is guilty of a violation of any statute and as a result thereof places the child in a position to cause injury to others, liability

would undoubtedly follow. In *Schultz* v. *Morrison* (91 Misc. 248; affd., 172 App. Div. 940), which is cited in the opinion of the trial court, it appeared that the defendant had given express permission to his son, a boy sixteen years of age, to drive his car in violation of the provisions of the Highway Law. The father was properly held chargeable for the acts of his son for negligently allowing him to operate the car in violation of the law. Here we are asked to go a step further in order to sustain this judgment and hold the father for permitting the boy to use an air gun, even though he did not make it possible for his son to possess it. There is no claim made that the father was present on the night of the accident or at any time when his son Milton used an air gun. The court at Trial Term said in part: " From the evidence in this case, although some of it is highly suspicious in character, it is not possible to find that either parent gave the rifle to the boy. It is the fair inference to be drawn from their testimony that the gun belonged to the boy and that his parents knew he was using it. That the evidence on this point is circumstantial rather than direct in no way detracts from its weight. ' Knowledge may be established by circumstantial evidence, in the face even of professions of ignorance.' (*Woloszynowski* v. *N. Y. C. R. R. Co.*, 254 N. Y. 206, 208.) That being so, the father, under the law the guardian of the boy, was guilty of negligence in knowingly permitting his son to use a dangerous instrument and must respond in damages for the boy's careless use of the weapon."

There is authority for the last statement. It may be conceded for the purposes of this case that a father, who knowingly permitted his son to use a dangerous weapon, would be answerable in damages for the boy's careless use of it. That seems to be the rule laid down in *Gudziewski* v. *Stemplesky* (263 Mass. 103 [1928]). Still in applying that rule, the facts and circumstances in each particular case must be considered to determine whether or not there is evidence sufficient to indicate that the parent knowingly permitted his son to use a dangerous instrument. In the case of *Gudziewski* v. *Stemplesky*, (*supra*) the court stated that ". The evidence warranted a finding that Stephen's mother had actual knowledge that he had an air gun and used it indiscriminately and mischievously," and furthermore, while there was ample evidence to indicate that the father also had knowledge, still he failed to testify.

In this case Morris Feuer, the father, did testify. He stated in substance that he occupied the upper floor, consisting of seven rooms, at No. 722 Manida street, with his wife, his son Milton and a daughter. He was engaged in the hardware business in the lower part of the city. He was accustomed to leave his home at about

seven-thirty or eight in the morning. Ordinarily he did not return until seven-thirty or eight o'clock in the evening. On Saturday nights he closed his store at ten o'clock. He was at home every Sunday. He never saw an air gun in his house; he did not buy one for Milton, nor did he give him any money to purchase one, and furthermore he never saw Milton use a gun. His testimony was not impeached in any manner. Pearl Feuer, the wife of Morris, denied that Milton ever possessed an air gun. Milton Feuer denied that he ever owned a gun.

Respondents seek to sustain the judgment as against the appellant Morris Feuer on the theory that the circumstantial evidence in this case as to ownership and possession points to the fact that Milton owned a gun and that his parents knew he was using it. In *Ruppert* v. *Brooklyn Heights R. R. Co.* (154 N. Y. 90, 94), Judge O'BRIEN said: " In order to prove a fact by circumstances there should be positive proof of the facts from which the inference or conclusion is to be drawn. The circumstances themselves must be shown and not left to rest in conjecture, and when shown it must appear that the inference sought is the only one which can fairly and reasonably be drawn from these facts."

The only evidence which might indicate that Milton ever had an air gun in his possession prior to the date of the accident was adduced in the respondents' case. Henrietta Kuchlik stated that early in the month of January, 1932, she was in the house with several other boys and girls. At about five o'clock in the afternoon, she had occasion to go to Milton's bedroom and opened the door. There she saw Milton and two girls. The girls were watching Milton use an air gun. She remained there for about two minutes. At that time Milton's mother was in the kitchen and his father was not at home. She further testified that she had been on very friendly terms with Milton and his sister for about nine years and was accustomed to visit the house daily. While she had occasion to go about the house and to a playroom which the children had fixed up in the basement, she did not claim that she had ever seen an air gun in the house except on that one occasion.

Later, on the night of February fifth, she saw Milton, while in company with other boys, shoot at an electric light globe on Manida street. She could not say whether or not there was more than one gun at that time. One Julie Jacobs had a " BB " gun on that occasion. She fixed the time at about seven o'clock in the evening.

One Esther Shapiro testified that she saw the Feuer boy with a gun two days before the accident about four o'clock in the afternoon, while she was talking to a Mrs. Schur. At first, she stated, the boy walked " out " with a gun and then changed her statement and said

that he walked "in" with a gun; that Mrs. Schur told Milton to put away the gun "because he is going to be able to hurt somebody." At this point it might be well to remark in passing that Mrs. Schur denied absolutely, when called as a witness for the defense, that anything of the kind had ever occurred.

One Mildred Kaufman testified that she formerly lived at 671 Manida street; about three nights before the accident "I passed Manida street and I seen a group of boys, and I seen Milton with a gun. You see, my husband has a garage right near Kuchlik's house, so I seen a group of boys, and I passed and I told them to be careful, and they were careful, and I walked by." There were about five or six boys in the group. Although she lived in the neighborhood for a period of four years, the only time she saw Milton use a "BB" gun was on that night, and he was the only boy she recognized. She first told this story to Mrs. Kuchlik about a week after the accident happened. However she was not called as a witness in the Magistrate's Court. About two weeks prior to the trial of this case, she was taken by the plaintiff Isadore Kuchlik to his attorney's office.

Plaintiff's witness, Martin Kaplan, said that he did not see a gun in the Feuer's house subsequent to the accident. It appeared that he had testified in the Magistrate's Court on a previous occasion. There he said that he had seen a gun in Milton's possession on a Sunday evening prior to his appearance as a witness in the Magistrate's Court. Where he had seen it does not appear. The explanation given by the witness was that he had reference to the gun which he had seen in the possession of Milton on the night of the accident. It should be borne in mind that this witness was called by the plaintiff who vouched for his reliability and credibility. (*Hanrahan* v. *New York Edison Co.*, 238 N. Y. 194.)

There is no evidence in this record, either direct or circumstantial, to show that the appellant Morris Feuer gave his son an air rifle or that he knowingly permitted his son to possess or use one. The positive proof of the facts from which the court at Trial Term inferred that the gun belonged to the boy, and that his parents knew he was using it, is certainly lacking in this case.

For the reasons set forth herein, I feel constrained to dissent from the ruling of the majority of the court and to vote for a reversal of the judgment and a dismissal of the complaint upon the merits, as against the defendant Morris Feuer. In all other respects the judgment should be affirmed.

MARTIN, J., concurs.

Judgment affirmed, with costs.