JASON LANE, JR., BY HIS NEXT FRIEND, JASON LANE, PLAINTIFF v. DAIZEL CHATHAM AND JOYCE CHATHAM, DEFENDANTS.

(Filed 16 December, 1959.)

**1. Parent and Child § 7—**

The common law rule that the mere relation of parent and child imposes no liability on the part of the parent for the torts of the child is recognized in this State.

**2. Same—**

An air rifle is not a dangerous instrumentality *per se* and the mere fact that parents give their nine-year old son an air rifle, and permit him to use it, is insufficient to impose liability on the parents for a negligent or willful injury inflicted by the son in the use of the air rifle.

**3. Same—**

Parents may be held liable for an injury negligently or willfully inflicted by their minor son with an air rifle given the son by the parents if under the circumstances the parents could or should, by the exercise of due care, have reasonably foreseen that the boy was likely to use the air rifle in such manner as to cause injury, and failed to exercise reasonable care to prohibit, restrict or supervise his further use thereof, the basis of liability being the parents' independent negligence.

**4. Same—**

Evidence tending to show that a nine-year old boy intentionally shot his playmate in the eye with an air rifle given him by his parents and that on three prior occasions the boy had intentionally inflicted injury on persons with the air rifle, with further evidence that the boy's mother had been informed or had knowledge thereof but without evidence that the boy's father had knowledge thereof, *is held* sufficient to be submitted to the jury as to the negligence of the mother but is insufficient to be submitted to the jury as to the father's negligence.

HIGGINS, J., concurring.

APPEAL by defendants from *Patton, J.,* March Term, 1959, of RUTHERFORD.

Civil action for damages for personal injuries inflicted by defendants' minor son by means of an air rifle, based on alleged negligence of defendants in giving him the air rifle and in failing, after notice of prior misuse, to prohibit, restrict or supervise his further use thereof.

On November 30, 1957, the Saturday after Thanksgiving, Raymond Chatham, then nine years old, shot plaintiff with his BB gun or air rifle. The shot entered plaintiff's eye, causing total loss thereof.

Defendants filed separate demurrers to the complaint, each asserting plaintiff's failure to allege facts sufficient to constitute a cause of action. Judge Huskins overruled the demurrers and defendants excepted.

At the close of all the evidence, defendants made separate motions for judgment of nonsuit. The motions were overruled and defendants excepted. Thereupon the court submitted and the jury answered two issues, viz.: "1. Was the plaintiff injured by the negligence of the defendants, as alleged in the complaint? Answer: Yes. 2. What damage, if any, is plaintiff entitled to recover of defendants? Answer: $1800.00."

Judgment for plaintiff, in accordance with the verdict, was entered. Defendants excepted and appealed.

*Hamrick & Hamrick for plaintiff, appellee.*
*Harry K. Boucher and Stover P. Dunagan for defendants, appellants.*

BOBBITT, J. Defendants' only assignments of error are (1) to the overruling of their demurrers, and (2) to the overruling of their motions for judgment of nonsuit.

As to the rulings on the demurrers: Suffice to say, certain unsupported *alleged facts* would strengthen plaintiff's position. Hence, defendants' contention that *the evidence* was insufficient for jury consideration poses the more serious question.

"At common law it is well established that the mere relation of parent and child imposes on the parent no liability for the torts of the child . . ." 67 C.J.S., Parent and Child § 66; 39 Am. Jur., Parent and Child § 55. Our decisions are in full accord: *Brittingham v. Stadiem,* 151 N.C. 299, 66 S.E. 128; *Linville v. Nissen,* 162 N.C. 95, 77 S.E. 1096; *Taylor v. Stewart,* 172 N.C. 203, 90 S.E. 134; *Bowen v. Mewborn,* 218 N.C. 423, 11 S.E. 2d 372; *Hawes v. Haynes,* 219 N.C. 535, 14 S.E. 2d 503.

In *Brittingham v. Stadiem, supra,* this statement is quoted with approval: "Relationship does not alone make a father answerable for the wrongful acts of his minor child. There must be something besides relationship to connect him with such acts before he becomes liable.

It must be shown that he approved such acts, or that the child was his servant or agent."

In the *Brittingham* case, a pistol was involved; and recovery against the *feme* defendant (mother) was upheld on the ground that her twelve-year old son's negligent act was committed while he was acting as her servant within the scope of his employment in her pawn shop. The liability of the defendant father was based on Section 2105 of the Revisal of 1905, which provided, in part: "Every husband living with his wife shall be jointly liable with her for all damages accruing from any tort committed by her . . ." It is noted that this statutory provision was repealed in 1921 and that the present statute, G.S. 52-15, provides in part: "No husband shall be liable for damages accruing from any tort committed by his wife . . ."

In *Taylor v. Stewart, supra,* evidence that the death of plaintiff's intestate was proximately caused by the negligent operation of his father's automobile by a thirteen-year old boy, and that the father habitually permitted his said son to operate his automobiles *in violation of statute,* was held sufficient to impose liability on the father. The actionable negligence of the boy was not imputed to the father on account of their relationship. His responsibility for his son's actionable negligence was based on his own negligence.

In the Restatement of the Law of Torts, § 316, the general rule is stated as follows: "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control."

To impose liability upon the parent for the wrongful act of his child (absent evidence of agency or of the parent's participation in the child's wrongful act), for which the child, if *sui juris,* would be liable, it must be shown that the parent was guilty of a breach of legal duty, which concurred with the wrongful act of the child in causing the injury. "A parent is liable if his negligence combines with the negligence of the child and the two contribute to injury by the child." 67 C.J.S., Parent and Child § 68.

Uncontradicted evidence tends to show:

The Lane and Chatham families lived in close proximity to the "Chatham Store." The Lanes and Chathams had been good friends, had attended the same church and the children had attended the same school. Plaintiff and Raymond often played together and were good friends. Defendants had purchased and given to Raymond a BB

gun or air rifle at Christmas of 1956. Plaintiff, also Howard Lane, plaintiff's younger brother, had been given air rifles by their father. Prior to his injury, plaintiff's air rifle was broken and thereafter he shot Raymond's air rifle "some." BB shot were sold at the "Chatham Store." On Thanksgiving Day, two days before plaintiff was injured, Joyce Chatham, Raymond's mother, had given him two boxes of BB shot.

The evidence offered by plaintiff is the only evidence as to what occurred on the occasion of plaintiff's injury. (Raymond did not testify.) It tends to show: Between 1:00 and 1:30 p.m., after eating dinner, plaintiff, then fourteen years old, was sitting on the back porch of his home. Raymond jumped from behind a nearby tree, pointed his BB gun straight at plaintiff and shot him, "the bullet" entering plaintiff's eye "straight range."

As to Raymond's alleged prior misuse of his air rifle, plaintiff's evidence tends to show:

1. On Thanksgiving Day, two days before plaintiff was injured, a married sister (Peggy Jo Lane Owens) and a younger sister (Margaret Lane) of plaintiff went to the "Chatham Store," purchased coca-colas; and as they walked out of the store "the little boy" (Raymond) jumped out from the side of the store and shot Peggy Jo with his air rifle, striking her on the hip and making a blister. Peggy Jo went right back into the store and told the *feme* defendant what Raymond had done. The *feme* defendant had nothing to say.

2. About two or three weeks before plaintiff was injured, Raymond shot Howard Lane, plaintiff's younger brother, then nine years old, with match stems that he put into the BB gun. Raymond shot "about ten or twelve times" and hit Howard "about four times" on his arms and legs and "made some marks." Howard told one Davis what Raymond had done. On the same day, Davis talked with the *feme* defendant. In their conversation, the *feme* defendant brought up the subject of said incident and "stated that she did not punish him because Raymond told her that Howard had shot him first."

3. A few weeks before plaintiff was injured, Marshall Hollifield, then eleven years old, went to the "Chatham Store." Raymond and the *feme* defendant were there. Raymond chased him around the store "a couple of times"—"with his gun"—but did not shoot at him. Marshall told the *feme* defendant, then went on home. The afternoon of November 30, 1957, *after plaintiff had been shot and taken to the doctor*, Raymond chased Marshall home from the store with his gun and shot at him, hitting him once "on the britches leg."

It is noted: The testimony tending to show notice to the *feme* defendant of Raymond's conduct on said three prior occasions was con-

tradicted by her in all particulars. Moreover, she testified that "Raymond's daddy took the air rifle away from him just as soon as the accident happened."

There was ample evidence to support a finding that plaintiff's injury was caused by Raymond's wrongful act. The crucial question is whether the evidence was sufficient to support a jury finding that defendants or either of them was guilty of a breach of legal duty that combined and concurred with Raymond's wrongful act and so contributed to plaintiff's injury.

Cases relating generally to the liability of a parent for the wrongful acts of his minor child, under diverse factual situations, are collected in Annotation, 74 Am. St. Rep. 801, and in Annotation, 155 A.L.R. 85. Cases relating to the liability of a parent for injuries inflicted by a minor child when the parent permits his minor child to have firearms or access thereto are collected in Annotation, 44 A.L.R. 1509, and in Annotation, 12 A.L.R. 812.

This Court has had no occasion to pass upon a case involving a parent's liability for injury inflicted by a minor son's wrongful use of an air rifle. Indeed, the number of decisions in other jurisdictions involving this factual situation is quite small. Recovery by plaintiff was upheld in *Gudziewski v. Stemplesky* (Mass.), 160 N.E. 334; *Kuchlik v. Feuer*, 267 N.Y.S. 256, affirmed 191 N.E. 555; *Archibald v. Jewell*, 70 Pa. Superior Ct. 247. Recovery was denied in *Martin v. Barrett* (Cal.), 261 P. 2d 551; *Highsaw v. Creech* (Tenn.), 69 S.W. 2d 249; *Fleming v. Kravitz* (Pa.), 103 A. 831; *Harris v. Cameron* (Wis.), 51 N.W. 437; *Capps v. Carpenter* (Kan.), 283 P. 655; *Norlin v. Connolly* (Mass.), 146 N.E. 2d 663.

It is universally held that an air rifle is not a dangerous instrumentality *per se*. It should be noted that we have no statute such as Section 1896 of the New York Penal Code, which provides, in part, that it is a misdemeanor to give to a person under the age of sixteen years "... any air-gun, spring-gun or other instrument or weapon in which the propelling force is a spring or air or any instrument or weapon commonly known as a toy pistol . . ." True, an air rifle may be so used as to inflict injury (particularly injury to an eye); but this is true of a bow and arrow set, a baseball bat, a knife, a bicycle, and many other devices with which children of Raymond's age are accustomed to play.

It is noted that there was no evidence as to the make or power of Raymond's air rifle. Nothing else appearing, we assume it was of the type and kind given to plaintiff and his younger brother and used generally by boys of comparable age in the community. Although the evidence is not specific, the implication is that the Lanes and Chath-

ams lived in a rural community or small settlement where it was customary for boys of Raymond's age to have and to use air rifles in the course of their outdoor activities.

Evidence that defendants gave Raymond an air rifle at Christmas 1956, and permitted him to use it, is insufficient, standing alone, to support a jury finding that defendants are liable for Raymond's wrongful act.

The applicable rule is this: Where parents entrust their nine-year old son with the possession and use of an air rifle and injury to another is inflicted by a shot intentionally or negligently discharged therefrom by their son, the parents are liable, *based on their own negligence,* if under the circumstances they could and should, by the exercise of due care, have reasonably foreseen that the boy was likely to use the air rifle in such manner as to cause injury, and failed to exercise reasonable care to prohibit, restrict or supervise his further use thereof.

Applying this rule, the evidence is insufficient to establish liability on the part of Daizel Chatham. Prior to plaintiff's injury, Raymond had used the air rifle for more than eleven months. There is no evidence of any incident (prior to plaintiff's injury) involving Raymond's misuse thereof in his father's presence. Daizel Chatham testified: "No one had ever mentioned to me about my son Raymond shooting people with his air rifle." We find no evidence tending to contradict or in conflict with this statement. Nothing appears in the evidence to support a finding that Daizel Chatham should have reasonably foreseen that Raymond was likely to use the air rifle in such manner as to cause injury. We have found no decision in this jurisdiction or elsewhere that would support a recovery by plaintiff against Daizel Chatham under the circumstances disclosed by the evidence in this case. Hence, Daizel Chatham's motion for judgment of nonsuit should have been sustained.

As to the *feme* defendant, the situation is different. The credibility of the testimony as to prior incidents was for jury determination; and we must consider this evidence, and all inferences and intendments that may be drawn therefrom, in plaintiff's favor. When so considered, we are constrained to hold that it was sufficient to support a finding that the *feme* defendant, after learning of Raymond's misuse of his air rifle, breached her legal duty by failing to exercise reasonable care to prohibit, restrict or supervise Raymond's further use thereof, and that by the exercise of reasonable care she should have reasonably foreseen that Raymond, in his unrestricted further use thereof, was likely to use the air rifle in such manner as to inflict injury. Hence,

as to her, the motion for judgment of nonsuit was properly overruled; and, as to her, the verdict and judgment will stand.

As to defendant Daizel Chatham, reversed.

As to defendant Joyce Chatham, no error.

HIGGINS, J., concurring: I concur in the opinion. However, court decisions that air rifles are not *per se* dangerous weapons are as out of date as the horse and buggy. Marvelous advances have been made both in the precision and power of pneumatic arms. Sporting magazines on practically every newsstand carry stories and advertisements of air rifles capable of driving a lead slug through a three-quarter-inch pine board. It is time for the courts to find out what the public, or at least those interested in such matters, has known for some time —that a well manufactured air rifle is now not only a dangerous, but a deadly weapon. I am unable to approve decisions to the contrary.