Leo F. Hayes, J.
On April 25, 1973, infant plaintiff, James Wheeler, age 12, was allegedly shot in the eye by a BB from an air gun fired by the infant defendant, David Bello, who was at that time 13 years of age. Raymond J. Wheeler, father of the injured infant, James Wheeler, has commenced this action for damages individually and on behalf of his infant son against David Bello and David’s natural guardian, Dominick Bello. The defendants have interposed a counterclaim seeking recovery *541 from Raymond J. Wheeler under the theory of Dole v. Dow Chem. (30 N Y 2d 143). Plaintiffs have brought on this motion seeking an order pursuant to CPLR 3211 (subd. [a], par. 7) dismissing the counterclaim of the defendants against the. plaintiff, Raymond J. Wheeler, contending that the counterclaim does not state a cause of action. Plaintiffs refer to the recent decision of Holodook v. Spencer (43 A D 2d 129) claiming that the parent’s failure to supervise does not state a cause of action and therefore, defendants ’ counterclaim should be dismissed.
Prom the moving papers a short history of the air gun in question is most important. Defendants allege that the air gun was purchased for the infant plaintiff, James Wheeler, by his father, Raymond J. Wheeler, at Christmas time, 1972, and that it was turned over to and/or given to the infant plaintiff by his father at or about that time, with no restrictions on its use. Defendants further contend that on the 25th day of April, 1973, the infant plaintiff, together with one or more infant companions, was using infant plaintiff’s air gun and pellets furnished to him by his father for the purpose of shooting frogs. At some time during that day the gun was handed by the infant plaintiff to the infant defendant and shortly thereafter the infant defendant either intentionally or accidentally fired the air gun in the direction of the infant plaintiff and the pellet entered the infant plaintiff’s right eye allegedly causing the damages for which this action was brought.
In reviewing the present status of the law from Gelbman v. Gelbman (23 N Y 2d 434) up to the present time, it is interesting to note that decisions following Gelbman have abolished the intra-family tort immunity theory in New York State. However, in interpreting the Gelbman decision, the Appellate Division has held in Holodook v. Spencer (supra) that mere lack of supervision by a parent toward his child is not an actionable tort: “ There can be no basis for a claim against the parent by such tort-feasor for contribution based merely on an alleged lack of supervision.” (43 A D 2d, at p. 137.) The Holodook case involved a four-year-old child who was injured when he was struck by an automobile while running from between parked cars. The operator of the motor vehicle was sued by the injured child’s father, acting both in his own behalf and as natural guardian of the injured infant. The defendant counterclaimed against the child’s father, and initiated a third-party complaint against the child’s mother, seeking indemnification on the ground that the parents’ negligence in failing to provide for the child’s proper care and instruction and in leaving him in such circumstances *542 that he ran from between the parked cars and collided with defendant’s vehicle, was a proximate cause of the accident. The Appellate Division held that the Supreme Court, Special Term, had improperly denied a motion to dismiss the counterclaim and third-party complaint. In so holding, the reviewing court noted: (p. 135) “ The duty to supervise a child in his daily activities has as its objective the fostering of physical, emotional and intellectual development, and is one whose enforcement can depend only on love. Each child is different, as is each parent; as to the former, some are to be pampered while some thrive on independence; as to the latter, some trust in their children to use care, others are very cautious. Considering the different economic, educational, cultural, ethnic and religious backgrounds which must prevail, there are so many combinations and permutations or parent-child relationships that may result that the search for a standard would necessarily be in vain — and properly so. Supervision is uniquely a matter for the exercise of judgment. For this reason parents have always had the right to determine how much independence, supervision and control a child should have, and to best judge the character and extent of development of their child.”
The theory that lack of supervision is a nonactionable tort was also sustained in Lastowski v. Norge Coin-O-Matic (44 A D 2d 127) and in the matter of Ryan v. Fahey (43 A D 2d 429). These two cases also refused to allow a counterclaim against the parent of plaintiff.
The theory of the counterclaim against the plaintiff, Raymond J. Wheeler, as the court sees it, is not based merely upon his alleged failure to exercise parental supervision; it is rather grounded upon his committing an air rifle to the unsupervised care and use of an infant. The courts have held that a parent may be sued when the parent knowingly allows an infant to use an air rifle causing injury to other persons. Thus, in Kuchlik v. Feuer (239 App. Div. 338, affd. 264 N. Y. 542) the court stated: ‘ ‘ The infant defendant shot the infant plaintiff with an air rifle. The infant plaintiff sued to recover for personal injuries alleged to have been thus sustained by her through the negligence of the defendants, and her father sued to recover for loss of her services and for medical expenses incurred on her behalf. The trial court found on the evidence that the gun belonged to the infant defendant and that his parents knew he was using it. The father was held liable on the ground that ‘ his negligence made it possible for the child to cause the injury complained of and probable that the child would do so.’ ”
*543 Furthermore, New York Jurisprudence (vol. 15, § 392, Domestic Relations, pp. 629-630) states: ‘ ‘ Thus, entrusting an immature child with a gun or an air rifle may constitute negligence on the part of the parent so as to render the parent liable for the tortious misuse of the gun by the child.”
It is not essential to our consideration to determine whether an air gun is a “deadly weapon” or a “dangerous instrument ” as those terms are discussed in the Practice Commentary (McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 10.00, subds. 12, 13). However, it should be noted that subdivision 4 of section 265.05 of the Penal Law states: ‘ ‘ Any person under the age of sixteen years who has in his possession any * * * air gun * * * shall be adjudged a juvenile delinquent.”
Moreover, subdivision 5 of section 265.10 of the Penal Law reads as follows: “Any person who disposes of any of the weapons, instruments, appliances or substances specified in subdivision four of section 265.05 to any other person under the age of sixteen years is guilty of a class A misdemeanor.”
Although the allegations of the present case go one step beyond the factual situation discussed in the Kuchlik case in that it is alleged here that the infant son entrusted the air gun to another infant who then allegedly shot infant plaintiff, the principle underlying the decision in Kuchlik would appear to have full vitality and application here. The injury to the plaintiff in the instant case may well have a proximate relationship to the alleged affirmative act of entrusting the air rifle to his unsupervised use, and apportionment of damages under these circumstances would appear perfectly proper. Thus, the instant case is clearly distinguishable from Holodook, Ryan and Lastowski.
A fair reading of all the pleadings before this court would indicate that an affirmative act of the plaintiff father, Raymond J. Wheeler, set into motion the chain of activity that resulted in injury to the infant plaintiff, James Wheeler. Whether or not that affirmative act bears a proximate relationship to the act immediately causing the injury is a matter to be determined at trial, as is the issue of apportionment of damages among the various defendants.
The plaintiff father, Raymond J. Wheeler, has elected to initiate this litigation. He may well now realize both direct benefits as a derivative plaintiff and indirect benefits as guardian of the infant plaintiff. It is alleged that an affirmative act of his is •proximately related to the incident that gave rise to this lawsuit. In view of all these considerations, it seems perfectly appropriate to permit the trier of fact to consider the issues of indemnification and apportionment of damages.