CHARLES GRINDSTAFF v. JOHN E. WATTS AND MANNING WATTS, A MINOR.

(Filed 3 May, 1961.)

**1. Parent and Child § 7—**

Ordinarily a parent may not be held liable for a tort committed by his child solely by reason of the relationship.

**2. Boating—**

The Family Purpose Doctrine will not be extended by the courts to cover motor-boats, and the owner of such boat will not be held liable for an injury inflicted by negligent operation of the boat by his son, even though the son was operating the boat with the owner's consent, in the absence of evidence of any structural or mechanical defect in the boat or that the son was inexperienced or had theretofore been guilty of recklessness or irresponsibility in the operation of the boat, or was engaged at the time in a mission for the owner.

**3. Same—**

In a suit to recover for injuries inflicted through the negligent operation of a boat by the son of the owner, evidence as to the number of motor-boats registered in the State is irrelevant and immaterial, the Family Purpose Doctrine not being applicable.

**4. Constitutional Law § 6—**

The General Assembly is the policy making division of the State government, and whether the public safety and welfare demand the extension of the Family Purpose Doctrine to cover motorboats lies within its province.

APPEAL by plaintiff from Huskins, J., September 12, 1960 Civil "A" Term of MECKLENBURG.

Civil action, instituted 4 September 1959, to recover for personal injuries suffered by reason of defendants' alleged negligent operation of a motor-boat.

The complaint alleges:

About 2:30 P.M. on 14 June 1958 plaintiff was riding in a small boat propelled by an outboard motor on the Catawba River in North Carolina, when a large cruiser type outboard motor-boat, owned by defendant John E. Watts and being operated by his son, Manning Watts, defendant, ran into the right rear of the craft in which plaintiff was riding, threw plaintiff into the water, struck and injured him. There were many boats in the river. Manning Watts was operating the cruiser in a reckless manner, at a high and unreasonable speed of approximately 30 miles per hour, without keeping a proper lookout, without giving warning of his approach, and with the helm unattended. Manning Watts was a minor, 19 years old, and resided in his father's

house as a member of the family. John E. Watts owned and maintained the cruiser for the use, pleasure, comfort and convenience of himself and family, including Manning Watts, and the cruiser was a family purpose vehicle. At the time of the accident in question Manning Watts was operating the boat "with the permission, consent and at the instruction and direction," and as agent, of his father. John E. Watts was additionally negligent in that he permitted Manning Watts to operate the boat, a dangerous instrumentality, knowing that he was inexperienced, reckless and irresponsible. Plaintiff's injuries were proximately caused by the alleged negligence of defendants.

Defendants answered as follows:

Defendants were not negligent in any of the respects alleged. Plaintiff was contributorily negligent in that he ran the boat he was operating at a high rate of speed across the course of the Watts boat. Manning Watts lives in the home of his father, but he is an emancipated minor, is gainfully employed, pays his father and mother for room and board, and has complete freedom in the use and expenditure of his wages. At the time of the collision he was on a mission of his own and was not acting as agent or servant of his father.

Plaintiff offered evidence, including the adverse examinations of John E. and Manning Watts. The evidence tends to show negligence on the part of Manning Watts resulting in serious injury to plaintiff, as alleged. The evidence also shows the following undisputed facts: John E. Watts had purchased the cruiser in March 1958. It had been in use one to three times each week. He and Manning had operated it, one as much as the other. Manning had operated it on occasions when his father was not present. Prior to March 1958 John E. Watts owned other boats over a period of 5 or 6 years. Manning had operated these boats more or less regularly. Manning had a key to the cruiser and had permission to use it for his own purposes whenever he desired. He had been employed by Douglas Aircraft for about 14 months. He lived with his father and mother and paid them for room and board. He used the remainder of his wages as he saw fit and provided his own necessaries. John E. Watts and his family, including Manning, used the boat for fishing and pleasure. "It was a family project."

Defendants did not offer evidence. At the close of plaintiff's evidence both defendants moved for nonsuit. The motion of John E. Watts was sustained. The motion of Manning Watts was denied.

The jury returned a verdict against Manning Watts and assessed damages. Judgment was entered accordingly. Manning Watts did not appeal.

From judgment of involuntary nonsuit in the action against John E. Watts, plaintiff appeals.

*Hedrick, McKnight and Parham for plaintiff, appellant.*
*McDougle, Ervin, Horack & Snepp and C. Eugene McCartha for defendant appellee.*

MOORE, J. The sole question on this appeal is whether or not the "family purpose doctrine," as applied in tort cases involving the operation of automobiles, is applicable to negligence cases arising out of the operation of motor-boats on the waters of the State.

For the purposes of this appeal we assume, but do not decide, that Manning Watts was a member of the family of John E. Watts according to the rules laid down in *McGee v. Crawford,* 205 N.C. 318, 321, 171 S.E. 326.

In any event, the plaintiff has failed to make out a *prima facie* case of actionable negligence against the defendant John E. Watts unless plaintiff is permitted to call to his aid the family purpose doctrine.

"At common law it is well established that the mere relation of parent and child imposes on the parent no liability for the torts of the child. . . ." 67 C.J.S., Parent and Child, s. 66, p. 795. "Relationship does not alone make a father answerable for the wrongful acts of his minor child. There must be something besides relationship to connect him with such acts before he becomes liable. It must be shown that he approved such acts, or that the child was his servant or agent." *Brittingham v. Stadiem,* 151 N.C. 299, 300, 66 S.E. 128. "To impose liability upon the parent for the wrongful act of his child (absent evidence of agency or of the parent's participation in the child's wrongful act), for which the child, if *sui juris,* would be liable, it must be shown that the parent was guilty of a breach of legal duty, which concurred with the wrongful act of the child in causing the injury. 'A parent is liable if his negilgence combines with the negligence of the child and the two contribute to injury by the child.' 67 C.J.S., Parent and Child, s. 68." *Lane v. Chatham,* 251 N.C. 400, 402, 111 S.E. 2d 598.

In the case at bar there is no showing that the boat was structurally or mechanically defective, that the son was inexperienced in the operation of the craft or was on any prior occasion reckless or irresponsible in its operation, or that the son was on any mission or engaged in any business for his father at the time of the accident. Therefore, the evidence is insufficient to impose liability on the father under the common law rule.

While the family purpose doctrine sometimes deals with relationships other than that of parent and child, it constitutes an exception to the common law rule with respect to the liability of a parent for the torts of his minor child, in automobile cases. The doctrine is not bottomed on the theory that automobiles are inherently dangerous instrumentalities, for it is uniformly held that they are not. *Robertson v. Aldridge,* 185 N.C. 292, 296, 116 S.E. 742.

The family purpose doctrine is an anomaly in the law. When the facts essential to invoke the doctrine are established by the verdict or admitted, an irrebutable presumption arises that the family member operator was the agent of the family member owner and acted pursuant to and within the scope of the agency. "The doctrine is an extension of the principle of *respondeat superior.* . . ." 38 N.C. Law Review 249, 250. In this State it is not the result of legislative action, but is a rule of law adopted by the Court. "The doctrine undoubtedly involves a novel application of the rule of *respondeat superior* and may, perhaps, be regarded as straining that rule unduly." 5 Am. Jur., Automobiles, s. 365, p. 705. It is a deviation from the ordinary principles of *respondeat superior* and has been severely criticized in some quarters. Shearman and Redfield on Negligence, Rev. Ed., Vol. 4, s. 690, p. 1628. It has been rejected by at least 27 States. 60 C.J.S., Motor Vehicles, note 72, pp. 1067-8; 21 Kentucky Law Journal, pp. 483-485.

This Court first began to consider and discuss the doctrine about 1913. *Linville v. Nissen,* 162 N.C. 95, 77 S.E. 1096. From time to time the subject was given further attention and comment. *Clark v. Sweaney,* 176 N.C. 529, 97 S.E. 474 (1918); *Taylor v. Stewart,* 172 N.C. 203, 90 S.E. 134 (1916). The first clear approval appears in *Robertson v. Aldridge, supra* (1923), and even here the Court seemed reluctant to fully accept the doctrine. The opinion states: ". . . (I)t is . . . held in our opinions by the great weight of authority that where a parent owns a car for the convenience and pleasure of the family, a minor child who is a member of the family, though using the car at the time for his own purposes with the parent's consent and approval, will be regarded as representing the parent in such use, and the question of liability for negligent injury may be considered and determined in that aspect." However, it further declares: ". . . (I)t is the rule approved by well considered authority and recognized in this jurisdiction that when an owner, parent or other, entrusts his car to one whom he knows or has every reason to believe is incompetent, or reckless and irresponsible, to an extent that makes a negligent injury probable, such owner may

be held liable, though the doctrine of *respondeat superior* is not presented."

In 1927 a commentator, discussing *Robertson* and other cases in this jurisdiction, concluded: "The North Carolina Court has not accepted the 'family purpose' doctrine, but rather bases its decisions strictly on the principles of agency, holding the parent liable for injuries caused by the negligent driving of his children only when it appears that the driver was acting within the authority, express or implied, of the owner. And refusing to hold the parent liable where it appears that there was no authority or an express prohibition. Any law changing such liability should come from legislative action and not by drastic decisions of the courts." 5 N.C. Law Review, 253-4.

The doctrine is now firmly imbedded in the law of this jurisdiction. *Lynn v. Clark*, 252 N.C. 289, 113 S.E. 2d 427; *Thompson v. Lassiter*, 246 N.C. 34, 97 S.E. 2d 492; *Stansel v. McIntyre*, 237 N.C. 148, 74 S.E. 2d 345; *Vaughn v. Booker*, 217 N.C. 479, 8 S.E. 2d 603; 132 A.L.R. 981; *Grier v. Woodside*, 200 N.C. 759, 158 S.E. 491.

Our latest definition of the doctrine may be deduced from the following statement: "Ordinarily, a cause of action based solely on the family purpose doctrine is stated by allegations to the effect that at the time of the accident the operator was a member of his family or household and was living at home with the defendant; that the automobile involved in the accident was a family car and was owned, provided, and maintained for the general use, pleasure, and convenience of the family, and was being so used by a member of the family at the time of the accident with the consent, knowledge, and approval of the owner of the car." *Lynn v. Clark, supra.*

The family purpose doctrine "came into being as an instrument of social policy to afford greater protection for the rapidly growing number of motorists in the United States." 38 N.C. Law Review 252-3. Perhaps nothing has had so great an impact on the business and social life of this country during the past half century as the advent and ever increasing use of automobiles and trucks. It was probably inevitable that there should be an alarming number of collisions and accidents resulting in injuries, suffering and economic loss. This possibly justified the search of the courts for some device to impose a greater degree of financial responsibility. On the other hand, the fact can not be ignored that a majority of the jurisdictions have managed somehow without the family purpose doctrine. It is certain that the courts in the adopting States have been exceedingly reluctant to broaden its scope or to extend it to other instrumentalities.

The Tennessee Court in 1929 applied it to motorcycles. *Meinhardt v. Vaughn*, 17 S.W. 2d 5. But there the Court was at great pains to

point out the similarities between motorcycles and automobiles. The Washington Court refused in 1949 to extend the doctrine to include bicycles. *Pflugmacher v. Thomas,* 209 P. 2d 443. The Court explained that the rule in automobile cases was adopted because the courts were "confronted with an alarming situation and an increasing social problem demanding solution." It found no such situation in the use of bicycles.

In our rather extensive examination of the authorities we do not find a single instance in which the doctrine has been applied to motorboats or boats of any kind. We find only one case involving boats in which the doctrine has been considered and discussed — *Felcyn v. Gamble,* 241 N.W. 37 (Minn. 1932). There, plaintiff sustained injuries caused by the alleged negligence of defendant's son in the operation of defendant's boat which, it was alleged, was "located and used . . . by his family for family purposes." It was further alleged that the son was a member of the family and plaintiff was a guest passenger in the boat. The court refused to apply the family purpose doctrine. It found no "necessity" for it and found that "the situation as regards motorboats is in no way comparable to that of the automobile."

The *Felcyn* case is cited in *Florenzie v. Fey,* 205 N.Y.S. 2d 91 (1960). This was an action by the owner-operator of a motor-boat to recover damages arising from a collision between his boat and defendant's motor-boat which was being operated at the time of the accident by a gratuitous bailee while defendant was not in the boat. The facts do not involve a family situation, but some of the comments of the court are pertinent. After declaring that defendant is not an insurer and that liability must rest on negligence and not mere ownership, the court referred to a report of the Joint Legislative Committee on Motor Boats recommending the adoption of a bill imposing responsibility on boat owners for the negligence of the operators. It pointed out that such a bill was introduced in 1958 and failed of passage. The rejection of the measure by the Legislature was undoubtedly given much weight by the court, for it concluded: "Until the passage of the bill recommended by the Joint Legislative Committee on Motor Boats or its equivalent, the plaintiff, on the facts such as here exist, is relegated to an action against the operator and may not recover against the owner. This may appear bizarre in a state where the age established for the operation of a motor boat is fourteen and, under certain conditions set out in the Navigation Law, s. 70, operators may be between the ages of ten to fourteen. However, until the intervention of statutory authority explicitly making the

GRINDSTAFF *v.* WATTS.

owner liable, no cause of action exists against the owner for the negligent act of a gratuitous bailee operating a motorboat."

In the absence of legislative action, this Court is not disposed to extend the family purpose doctrine in North Carolina to instrumentalities other than motor vehicles operating on public highways. Should the principles of *respondeat superior* be further relaxed, great uncertainty will exist in the field of agency and there will be an immediate clamor to extend the doctrine to still other instrumentalities to meet the exigencies of particular cases. *Hays v. Hogan,* 273 Mo. 1, 200 S.W. 286.

That there has been a marked increase in the use of motor-boats in recent years is common knowledge. Likewise the danger to life, limb and property from their use has proportionately increased. The General Assembly is not unaware of these facts. A chapter (75A), entitled "Motorboats," was added to the General Statutes in 1959, effective 1 January 1960 (G.S. 75A-1 to G.S. 75A-19). The declaration of policy is: "It is the policy of this State to promote safety for persons and property in and connected with the use, operation and equipment of vessels, and to promote uniformity of laws relating thereto." G.S. 75A-1. The chapter contains many regulations and provisions. It provides, among other things, that it shall be unlawful for any person to operate a motor-boat or manipulate water skis, surfboard or other similar device in a reckless or negligent manner or while intoxicated. G.S. 75A-10.

Plaintiff excepts to the exclusion of evidence tending to show that there were, as of 7 September 1960, the following categories of motor-boats propelled by machinery greater than ten horse power, registered in North Carolina: Regular, 36,231; dealers, 230; public, 202; total, 36,663. This evidence is irrelevant and immaterial to the issues in the case at bar.

The General Assembly is the policy-making division of government. If the public safety and welfare demand that the family purpose doctrine be extended to tort cases arising from the operation of motorboats, the legislative department is quite capable of understanding and providing for that need without assistance from the judicial branch of government. The decision lies with the Legislature.

The ruling of the trial court in sustaining the motion of defendant John E. Watts for nonsuit is

Affirmed.