JOSEPH D. WILLIAMS II, MINOR, BY GUARDIAN AD LITEM, JOSEPH D. WILLIAMS v. WACHOVIA BANK AND TRUST COMPANY, EX-ECUTOR OF ESTATE OF JOHN WALDROP WILLIAMS

JOSEPH D. WILLIAMS, INDIVIDUALLY v. WACHOVIA BANK AND TRUST COMPANY, EXECUTOR OF ESTATE OF JOHN WALDROP WILLIAMS

No. 763SC15

(Filed 7 July 1976)

1. **Automobiles § 108— family purpose doctrine**

The family purpose doctrine renders the owner or person with ultimate possession and control of a vehicle liable for its negligent operation by another, provided (1) the operator is a member of the family or household of the owner or person with control and is living at home; (2) the vehicle involved in the accident is a family vehicle and is owned, provided and maintained for the general use, pleasure and convenience of the family; and (3) the vehicle is being used by a member of the family with the consent, knowledge, and approval of the owner or person in control at the time of the accident.

2. **Automobiles § 108— motorbike operated by minor on private property — no family purpose vehicle**

A motorbike operated by an unlicensed minor exclusively on private property was not a "family purpose" vehicle in view of the the original purpose and scope of the family purpose doctrine.

APPEAL by defendant from *Lanier, Judge.* Judgment entered 15 September 1975 in Superior Court, PITT County. Heard in the Court of Appeals 3 May 1976.

This appeal stems from an accident involving the minor plaintiff, Joseph D. Williams II, and Johnathan David Williams, the son of John Waldrop Williams, now deceased. The executor

of John Waldrop Williams' estate, Wachovia Bank and Trust Company, is the sole defendant in this case.

On 28 December 1973 the minor plaintiff, through his father as guardian ad litem, instituted a civil action against defendant based upon the following allegations.

"That on or about May 5, 1972, Johnathan Davis Williams, operating a 1971 Honda Motorcycle, Serial No. SL100203264, while traveling west on the shoulder of Fairlane Road between Hooker Road and St. Andrews Street in the City of Greenville, County of Pitt, North Carolina, negligently ran into and collided said motorcycle with the person of Joseph D. Williams, II producing severe pain and personal injuries to him.

"That the 1971 Honda Motorcycle, Serial No. SL100203264 was a family purpose vehicle owned by the defendant, John Waldrop Williams, and said motorcycle was intended for the convenience and pleasures of his family and that Johnathan Davis Williams is the son of John Waldrop Williams and said son was living with the defendant herein as a member of his household at the time of the collision.

"That defendant was negligent in that his agent under the family purpose doctrine saw, or by the exercise of reasonable care, should have seen said child on or near the shoulder of the said street and defendant failed to maintain a vigilant lookout, give a timely warning of his approach, and to drive at such speed and in such manner that he could control said motorcycle if plaintiff herein, in obedience to a childish impulse, attempted to cross in front of defendant's approaching motor vehicle.

"That the negligence of the defendant's agent as aforesaid was the sole and proximate cause of said personal injuries."

The minor plaintiff prayed for damages of $25,000.00.

Joseph Williams' father and guardian ad litem filed a separate complaint based upon identical allegations to recover medical expenses and loss of income resulting from his son's injuries.

The evidence tends to show the following: At the time of the accident, Johnathan David Williams was fourteen years old. His father had recently purchased a Honda SL 100 motorcycle for his use and enjoyment. The SL 100 is a slightly larger version of the Honda Mini-Trail 50—the type of motorbike Johnathan Williams had before the SL 100. The SL 100 has an eleven horsepower engine. He testified that he knew that neither the SL 100 nor the Mini-trail 50 was a licensed vehicle: "I knew it was against the law to ride them on the highway. I never rode the bike on the highway or hard surfaced road."

Normally after school Johnathan would ride his motorbike in a vacant lot on Memorial Drive, where the Putt-Putt used to be, and in a tobacco field at the end of Fairlane Road. He was living with his family at 111 Fairlane Road at the time of the accident. The house was located directly across the street from the minor plaintiff's residence. According to Johnathan's testimony,

> "[t]o get to either the Putt-Putt or to the tobacco field, I would go to the end of the driveway and go either left or right. The vacant field on Memorial Drive was west and the tobacco field was east. To get to either of these places, no, I didn't have to go through the Williams' yard, but occasionally I did, a couple of times. . . .
>
> . . . .
>
> "I would ride along yards or through particular yards in order to avoid riding on the hard surfaced road. I would ride on the side of the road rather than on the road because if you ride on the road and a policeman comes along, you are in for it. I knew there was some reason not to ride on the road, and that is the reason I rode on the side. In fact I did ride in the yards; at the edge of the yard, but in the yard and not on the road."

In the late afternoon of 5 May 1972, while riding west through the yard of Joseph D. Williams, ten to twelve feet from the road, at a speed of about fifteen miles per hour, Johnathan struck the minor plaintiff with his motorbike. According to his testimony,

> "I was riding down through the yard in front of their yard. There was a vacant lot beside of their house when this happened but there is a house there now. Al Cayton was in

Williams v. Trust Co.

front of me, and he had his little brother which was about 2 or 3 years old riding with him, in front of him, and he went on down the road. He was about 40 feet in front of me and we were both just taking it easy. I was riding about 15 miles an hour with a tinted face shield over my helmet.

"When I got to the end of their lot I saw the boy and his sister come running out of the street from, it looked like my neighbor's yard across the street—come running out of their driveway. There was a bush there that blocked—you know, I couldn't see them from the bush until they got out in the street.

"When I saw them I hit my back brake and hit the horn. The little girl got out of the way and the little boy came in front of me. He was about 5 or 6 feet right dead in front of me. The little girl called him; I guess she called him. Anyway he stopped right in front of me for a dead split second and then he ran back towards his sister so I, instead of stopping completely—if I had stopped completely I would have stopped right on top of him, so I just kept on going and hit the brake and slid over to the right trying to avoid him—both of them—and the bike slid down with me.

"The front fork—its got a brace on it which hit his head and knocked him down—that is what caused the injury.

"As soon as I saw him coming out of the street—as soon as I saw him, I hit the horn and the brake. They were running, coming out of the street. In my opinion they were about 15 or 20 feet away from me when I hit the brake. I hit the brake hard and it locked—the back wheel locked, 15 feet away, some 5 yards away from the children.

"I saw them coming out of the driveway across the street from another neighbor's yard. The first time I saw them they were in the middle of the street as if they had come out of another driveway. That street is about 19 feet wide. They were about 10 feet out in the street."

The minor plaintiff was promptly taken to the hospital and treated for head injuries.

Mrs. Joseph Williams, the minor plaintiff's mother, testified that there was a path running parallel to the road in the

front portion of their yard; she had seen Johnathan Williams and others ride motorbikes along the path in the past; and after observing Johnathan riding around a pine tree on their property on one occasion, she asked him not to ride in the yard.

Defendant offered no evidence and, at the conclusion of plaintiff's evidence, moved for directed verdicts on the grounds: (1) that the evidence offered by plaintiff in each case fails to show actionable negligence on the part of the defendant; and (2) that "the evidence failed to disclose or reveal that the accident complained of occurred on a public roadway or highway and on account thereof, the Family Purpose Doctrine would not apply and that any negligence found on the part of the operator of the SL 100 Honda vehicle, to wit: David Williams would not be imputed to John Waldrop Williams, the owner thereof."

Both motions were denied by the court. The jury returned verdicts in favor of both plaintiffs.

Defendant appealed.

*James, Hite, Cavendish & Blount, by Robert D. Rouse III, for the plaintiffs.*

*Gaylord, Singleton & McNally, by Phillip R. Dixon, for the defendant.*

BROCK, Chief Judge.

The controlling question on appeal is whether the family purpose doctrine applies to Johnathan Williams' operation of the motorbike in this case. Assuming that there is sufficient evidence to submit the question of Johnathan Williams' negligence to the jury, plaintiff's sole basis for recovering against the estate of Johnathan Williams' father, the only defendant in this case, is the family purpose doctrine.

[1] The family purpose doctrine renders the owner or person with ultimate possession and control of a vehicle liable for its negligent operation by another, provided (1) the operator is a member of the family or household of the owner or person with control and is living at home; (2) the vehicle involved in the accident is a family vehicle and is owned, provided and maintained for the general use, pleasure and convenience of the family; and (3) the vehicle is being used by a member of the family with the consent, knowledge and approval of the owner

or person in control at the time of the accident. *Lynn v. Clark,* 252 N.C. 289, 113 S.E. 2d 427 (1960).

In *Grindstaff v. Watts,* 254 N.C. 568, 119 S.E. 2d 784 (1961), our Supreme Court held that the family purpose doctrine does not apply to motorboats:

> "In the absence of legislative action, this Court is not disposed to extend the family purpose doctrine in North Carolina to instrumentalities other than motor vehicles operating on public highways. Should the principles of *respondeat superior* be further relaxed, great uncertainty will exist in the field of agency and there will be an immediate clamor to extend the doctrine to still other instrumentalities to meet the exigencies of particular cases. [Citation omitted.]"

The *Grindstaff* case clearly discourages the extension of the doctrine beyond its original purpose and scope. To quote again from *Grindstaff* at page 572:

> "The family purpose doctrine 'came into being as an instrument of social policy to afford greater protection for the rapidly growing number of motorists in the United States.' 38 N.C. Law Review 252-3. Perhaps nothing has had so great an impact on the business and social life of this country during the past half century as the advent and ever increasing use of automobiles and trucks. It was probably inevitable that there should be an alarming number of collisions and accidents resulting in injuries, suffering and economic loss. This possibly justified the search of the courts for some device to impose a greater degree of financial responsibility. On the other hand, the fact cannot be ignored that a majority of the jurisdictions have managed somehow without the family purpose doctrine. It is certain that the courts in the adopting States have been exceedingly reluctant to broaden its scope or to extend it to other instrumentalities."

[2] Although a motorbike is a "motor vehicle" which could be operated on public highways by a licensed operator, the motorbike in this particular case was intended for use by an unlicensed minor driver off the public highways and, in fact, was used exclusively in this manner. For the same reasons articulated in *Grindstaff,* we are reluctant to stretch the family pur-

pose doctrine to the circumstances of this case. In our opinion the motorbike operated by Johnathan Williams exclusively on private property is not a "family purpose" vehicle in view of the original purpose and scope of the family purpose doctrine.

If negligence is to be imputed to the head of the household for the operation by family members of instrumentalities other than motor vehicles used in public vehicular areas, we think it is the function of the Legislature to determine the instrumentalities to be included. We should not have the uncertainty attendant upon the Court's extension of the family purpose doctrine on a piecemeal basis to meet the exigencies of particular cases.

The denials of defendant's motions for directed verdicts were error. The judgment appealed from is reversed; the verdicts are set aside; and this cause is remanded for entry of judgment for directed verdict for defendant in each case.

Reversed and remanded.

Judges HEDRICK and CLARK concur.