J. C. BRITTINGHAM v. B. STADIEM et al.

(Filed 18 November, 1909.)

1. Husband and Wife—Tort—Husband's Liability.

   The husband living with his wife is jointly liable with her for
   damages resulting from an injury received by a customer through
   the negligence of a clerk in her store, if she is liable therefor.
   Revisal, 2105.

2. Parent and Child — Tort of Child — Servant — Agent — Parent's
   Liability.

   The mere relationship of parent and child does not make the
   former liable in damages for the tort or negligent act of the
   latter.  It must be shown that he approved such acts, or that the
   child was his servant or agent.

3. Master and Servant—Negligence of Minor Employee—Dangerous
   Instrumentalities—Pistols—Care Required — Negligence—Ques-
   tions for Jury.

   Those who deal in dangerous articles are held to a degree of
   care commensurate with their dangerous character; and when
   the evidence tends to show that defendants employed their 12-
   year-old boy as a clerk in their pawnshop, where, among other
   things, second-hand pistols were dealt in, and that while care-
   lessly handling a pistol on which a loan was desired the boy
   unexpectedly shot and injured another customer in the store, and
   that the defendants had not taken the precaution to see that the
   pistol was unloaded or harmless, it is sufficient to take the case
   to the jury upon the question of defendant's actionable negli-
   gence, though the one negotiating the loan on the pistol informed
   the boy, at the time, that it was unloaded.

APPEAL by defendant from *Moore, J.,* February Term, 1908,
of GUILFORD.
   The plaintiff sued the defendant to recover damages for inju-
ries received by him while on business in the store owned by the

female defendant, B. Stadiem, from a pistol-shot wound inflicted by the twelve-year-old son and an employee of the defendants, while carelessly handling the pistol. The defendant denied all the allegations of the complaint, and the matters at issue were presented to the jury in two issues, to-wit:

1. "Was the plaintiff injured by the negligence of the defendant, as alleged?"

2. "What amount of damages, if any, is the plaintiff entitled to recover?"

The jury having responded to the first issue "Yes," and to the second issue "$350," judgment was rendered against the defendants, from which they appealed to this Court.

*Stern & Stern* and *Taylor & Scales* for plaintiff.
*J. A. Barringer* for defendant.

MANNING, J. If the *feme* defendant, Bettie Stadiem, is answerable to the plaintiff for the damages resulting from the tort alleged, then the defendant D. Stadiem, her husband, living with her at the time, is jointly liable. Revisal, sec. 2105; *Roberts v. Lisenbee,* 86 N. C., 136. The tortious act alleged having been committed by Moses Stadiem, the twelve-year-old son of the defendants, the first question presented is the liability of the defendants by virtue of this relationship. "Relationship does not alone make a father answerable for the wrongful acts of his minor child. There must be something besides relationship to connect him with such acts before he becomes liable. It must be shown that he approved such acts, or that the child was his servant or agent." *Johnson v. Glidden,* 74 Am. St. Rep., 795, in the note to which a large number of the decisions of the American courts are collected by Mr. Freeman. *Mirich v. Suchy,* 74 Kan., 715; *Chastain v. Johns,* 120 Ga., 977; *Evers v. Krouse,* 66 L. R. A., 592; 21 Am. & Eng. Enc., 1057. Wherever the principles of the common law prevail, this is the well-established doctrine. If there were in this case nothing more than the relationship to connect the parent with the wrongful act of his child, we would be constrained to reverse the judgment and hold that defendants were not liable.

The complaint, however, proceeds upon a twofold theory, and evidence was produced at the trial to support it, to-wit: 1. That the boy, Moses Stadiem, was the servant and employee of the defendant, doing work in the store as clerk, and the injury to plaintiff was caused by the negligent and careless act of this servant, while about his master's business and while doing an act he was directed to do. 2. That the defendant, as a part of her

business, conducted a pawnbroker's shop and received in pawn various articles, among them pistols, which she also carried in stock for sale, and that these dangerous weapons were carelessly and negligently permitted to lie on the counters and in the windows of the store, within reach of a boy of the size of Moses Stadiem, and that he "fooled with them." The immediate circumstances of the injury are thus described by the plaintiff: "I went into the store to pawn my watch. I was to receive $7. The man went to get the money for me and laid it down on the counter, and just as I was in the act of picking it up a pistol went off; the ball hit the counter, just in front of me, struck my little finger, went through left thumb, went into my right hand and lodged at the base of my third finger, where it was immediately afterwards cut out. I turned to see where the shot came from, and there was a boy standing in front of me with the smoking pistol in his hand. At the time I was shot, Stadiem grabbed the boy and told him, 'I have been telling you about fooling with pistols.'" The plaintiff further testified that the boy had been waiting on customers and asked his father what he was going to let him have on the watch. Another witness for the plaintiff testified that he had seen the boy in the store, selling goods and handling them and behind the counter, and that there were a lot of guns and pistols lying on the counters and in the windows, so that anybody that wanted to could handle them. The boy, Moses, testified that a man came to pawn a pistol; then plaintiff came in. "Before loaning the money, we wanted to see whether it was all right. I snapped it to see," and it fired. Phelps, another clerk in the store, stated that while he was making out the pawn ticket he told the boy to bring the pistol to him, and while he was bringing it, it fired; that the man who pawned it said it was not loaded; that he did not examine it, but laid it on the counter and was waiting on plaintiff. The evidence produced at the trial, as to the employment of the boy to aid in the work of the store as clerk, was sufficient to carry the case to the jury, and it was for them to determine the fact. Wood on Master and Servant, p. 584; *Perry v. Ford,* 17 Mo. App., 212.

Passing the sufficiency of the evidence to establish the additional relation of master and servant to that of parent and child, we will consider the duty of the defendant (the proprietor of the store) to the plaintiff, a customer, while in the store. In *Swinarton v. Le Bouttilier,* 28 N. Y. Supp., 53, the duty is thus declared: "We hold, furthermore, that, having invited the plaintiff into his store for his benefit, and having authorized and induced her to confide in the good conduct of his servants, to whom, in

. the transaction of his business, he committed her, he thereby assumed the duty, by the exercise of reasonable care, of protecting her from injury by the misconduct of such servants, and that he is answerable to her for any injury she has sustained by such misconduct." In *Mattson v. Railroad,* 95 Minn., 477; 70 L. R. A., 503, it is held: "The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article." The same doctrine is held by this Court. *Haynes v. Gas Co.,* 114 N. C., 203; *Witsell v. Railroad,* 120 N. C., 557; *Ross v. Cotton Mills,* 140 N. C., 115; *Horne v. Power Co.,* 144 N. C., 375; *McGhee v. Railroad,* 147 N. C., 142. See, also, *Railroad v. Currie,* 10 L. R. A. (new series), 367, and "subject note," where the American and English cases are collected and digested. In Cooley on Torts, star page 539, the learned author lays down this generally accepted doctrine: "It is immaterial to the master's responsibility that his servant at the time was neglecting some rule of caution which the master had prescribed, or was exceeding his master's instructions, or was disregarding them in some particular, and the injury which actually resulted is attributable to the servant's failure to observe the directions given him." In the case of *Dixon v. Bell,* 5 Maule & S., 198, the facts were that the defendant, being possessed of a loaded gun, sent a young servant girl to fetch it, with directions to a man named Leman, who had charge of it, to take the primings out, which was accordingly done. The girl presented it, in play, at the plaintiff's son and drew the trigger, when the gun fired and inflicted the injury for which damages were sought. *Lord Ellenborough, C. J.,* said: "The defendant might and ought to have gone farther; it was encumbent on him, who, by charging the gun, had made it capable of doing mischief, to render it safe and innoxious. This might have been done. by the discharge or drawing of the contents; and, though it was the defendant's intention to prevent all mischief, and he expected this would be effectuated by taking out the priming, the event has unfortunately proved that the order to Leman was not sufficient; consequently, as by his want of care the instrument was left in a state capable of doing mischief, the law will hold the defendant responsible. It is a hard case, undoubtedly, but I think the action is maintainable." Applying these principles to the evidence in this case, it will be seen that the defendant was liable because of the negligent act of her servant while doing

work within the scope of his employment, and that the defendant was negligent in entrusting to a servant of twelve years of age such a dangerous instrument as a pistol, without being careful to make it "innoxious." We have carefully examined his Honor's charge, in view of the exceptions taken to it by the defendants, and we think it placed the defendant's liability upon the correct grounds and fairly presented to the jury the different phases of her liability arising upon the evidence. This case is another illustration of the danger arising from the careless handling of pistols supposed to be unloaded and harmless, the pointing of which at another is condemned by section 3622, Revisal. Finding no reversible error committed at the trial, the judgment is

Affirmed.