PAULINE BOWEN, BY HER NEXT FRIEND, FANNIE BOWEN, v. MARVIN MEWBORN AND GEORGE MEWBORN.

(Filed 7 November, 1940.)

**1. Parent and Child § 7—**

The mere fact of the relationship does not render the father liable for the torts of his child, and the parent may be held liable only if the child commits the tort while acting as his agent or servant, or if the parent procures, commands, advises, instigates or encourages the commission of the tort, or is guilty of negligence in permitting the child to have access to some dangerous instrumentality.

**2. Same—Facts alleged held insufficient to support liability of parent for assault committed by child.**

Plaintiff instituted this action to recover for alleged willful, malicious, wrongful, and lustful assault made upon her by a minor. The complaint alleged that the minor defendant was using his father's car with the knowledge and consent of his father, that he invited plaintiff to take a pleasure trip therein with him, parked the car and made a willful, malicious and lustful assault upon plaintiff, and that the father had theretofore advised the minor to indulge in illicit sexual intercourse, and that the minor committed the tort because of the counsel and advice of the father. *Held:* The complaint nowhere alleges that the father counseled the son to commit an assault upon anyone, and fails to relate the counsel and advice of the father to the particular tort complained of, nor could the father have reasonably foreseen that his son would commit the assault as a natural and probable consequence of the advice, and the father's demurrer to the complaint should have been sustained.

STACY, C. J., concurring.

BARNHILL and WINBORNE, JJ., join in concurring opinion.

APPEAL by defendant George Mewborn from *Bone, J.,* at March Term, 1940, of PITT. Reversed.

This is an action brought by plaintiff against defendants to recover $20,000 against defendants for "willful, malicious, wrongful, lustful attack and assault upon her."

The material parts of the complaint, for the decision of this case, alleges:

"6. That on the night of the ...... day of May, 1939, the defendant, Marvin Mewborn, then being under the age of sixteen years, came to the home occupied by plaintiff and procured plaintiff to accompany him on a pleasure trip to Greenville in an automobile owned by the defendant, George Mewborn, and being driven and operated on the night in question by Marvin Mewborn with the knowledge and consent of his father.

"7. That the defendant Marvin Mewborn, after leaving another couple at the Greenville Municipal Stadium, drove away with the plaintiff ostensibly to visit a picture show in the City of Greenville; but said defendant turned away from Greenville and drove the automobile along a country road and thereupon began to make improper advances upon the said plaintiff; said improper advances being made both by uttering vile, lewd, indecent and lascivious words to and about the plaintiff and also by placing his hands upon the person of the plaintiff in a rude, indecent, and corrupt manner and both by word and deed the defendant Marvin Mewborn thereupon violently and maliciously insisted and demanded that he have illegal, unlawful, and immoral relations, to wit: sexual intercourse, with the plaintiff; whereupon the plaintiff resisted with all the means at her command the unwelcome, improper and indecent advances of the said defendant.

"8. That the plaintiff thereupon resisted the advances of the defendant with all the means at her command and begged him to cease and desist from such actions and pleaded with him to turn the automobile back in the direction of Greenville and proceed to the moving picture show as he had promised and said that he would do; that the plaintiff tried to reason with the defendant Marvin Mewborn and prevail upon him to stop his improper, indecent, outrageous advances; but the defendant Marvin Mewborn continued his wrongful, violent and malicious conduct toward the plaintiff, notwithstanding plaintiff's protests and reproofs, stating that he intended to have sexual intercourse with her and then and there repeatedly stating that he was acting in such manner because all men had 'to have some of it,' and that his father, the defendant George Mewborn, had told him to do such things; that Marvin Mewborn then and there to the great hurt, alarm, humiliation and embarrassment of this plaintiff forcibly assaulted her and attempted to rape and ravish her.

"9. That, as plaintiff is advised and believes, prior to the night of May ......, 1939, on numerous occasions and in the presence of divers

persons, the defendant George Mewborn had advised and counseled the defendant Marvin Mewborn to indulge in illicit sexual intercourse, and because of the aforesaid counsel, advice and conduct, procured, instigated and influenced his said son to maliciously assault and abuse the plaintiff in the manner aforesaid. . . .

"12. That, at the August, 1939, Term of Pitt Superior Court, in the case of 'State of North Carolina v. Marvin Mewborn,' wherein Marvin Mewborn was charged with the crime of committing an assault upon a female, to wit, on Pauline Bowen, the defendant there being one of the defendants here, entered a plea of guilty as charged and went upon the witness stand in his own behalf and in his testimony made a full and complete confession to the crime as charged; and then and there admitted all the matters and things as related above. . . .

"15. That, the willful, malicious, wrongful, lustful attack and assault made upon her person as aforesaid set forth by the defendant Marvin Mewborn proximately resulted in the damages and injuries above described and that the wrongful act and conduct of the said defendant, with its consequences, as fully above related, was proximately caused and instigated and influenced and produced by the words and counsel and assistance of the defendant, George Mewborn, as above related—all to the great hurt and damage of this plaintiff."

The defendant George Mewborn demurred to the complaint on the following ground:

"(A) The action is based upon an alleged assault upon the plaintiff, Pauline Bowen, by one Marvin Mewborn who the plaintiff alleges was under the age of sixteen years on the day of the alleged assault, and the plaintiff attempts to join the demurring defendant only so far as it may connect him with sections 6 and 9 of the complaint.

"(B) Section 6 alleges that the automobile in which the defendant Marvin Mewborn was riding was owned by this demurring defendant and at the time and on the night in question was being operated with the knowledge and consent of the said George Mewborn.

"(C) Section 9 is as follows: 'That as the plaintiff is advised and believes, prior to the night of May ....., 1939, on numerous occasions and in the presence of divers persons, the defendant George Mewborn had advised and counseled the defendant Marvin Mewborn to indulge in illicit sexual intercourse, and because of the aforesaid counsel, advice and conduct, procured, instigated and influenced his said son to maliciously assault and abuse the plaintiff in the manner aforesaid.' "

The court below overruled the demurrer. The defendant George Mewborn excepted, assigned error and appealed to the Supreme Court.

*Sam B. Underwood, Jr., and Albion Dunn for plaintiff.*
*Walter G. Sheppard and J. B. James for defendant George Mewborn.*

CLARKSON, J.   In Cooley on Torts (4th Ed.), Vol. 1, pp. 197-8, it is said: "A father is not liable, merely because of the relation, for the torts of his child, whether the same are negligent or willful.   He is liable only on the grounds that he would be liable for the wrong of any other person, as that he directed or ratified the act, or took the benefit of it, or that the child was at the time acting as his servant.   There is no necessary presumption that the child is acting as a servant of the father, but it will be so presumed when the child is living at home and using his father's team with which he does the wrong.   A parent may, however, be held liable for his own negligence in permitting his child to have access to some instrumentality potent to mischief."

In 20 R. C. L. (Parent and Child), p. 627, sec. 33, in part, says: "It has been shown in a previous article that infants, even those of tender age, are liable in a civil action for torts committed by them.   Conversely, parents are not liable for torts committed by their minor children without participation in the fault by the parent."   Madden on Domestic Relations (Handbook Series), pp. 398-9; The Law of the Domestic Relations (2nd Ed.), Eversley, p. 564; Burdick's Law of Torts (4th Ed.), sec. 121, p. 159; *Brittingham v. Stadiem,* 151 N. C., 299 (300); *Ballinger v. Rader,* 153 N. C., 488; *Linville v. Nissen,* 162 N. C., 95; *Taylor v. Stewart,* 172 N. C., 203.

In *Linville v. Nissen, supra,* at p. 99, we find: "A parent is not liable for the torts of his minor son.   'The relationship does not alone make a father answerable for the wrongful acts of his minor child.   There must be something besides relationship to connect him with such acts before he becomes liable.   It must be shown that he has approved such acts or that the child was his servant or agent.'   *Johnson v. Glidden,* 74 Am. St., 795, which cites a large number of cases."

In *Watts v. Lefler,* 190 N. C., 722 (725-6), is the following: "There is a conflict of decisions, but we think the greater weight sustains the position in the above cited authorities.   The father—the owner of the automobile and the head of the family—has the authority to say by whom, when and where his automobile shall be driven or he can forbid the use altogether.   With full knowledge of an instrumentality of this kind, he turns over the machine to his family for 'family use.'   When he does this, under the 'family doctrine,' which applies in this State, he is held responsible for the negligent operation of the machine he has entrusted to the members of his family."   *Matthews v. Cheatham,* 210 N. C., 592 (597-8).

The fact that the son, Marvin Mewborn, was driving his father's car was no evidence that this was the instrumentality of plaintiff's wrong. The injury and assault was caused by the lust and lasciviousness of defendant Marvin Mewborn.   The charge against defendant George Mew-

born is that he had given the plaintiff lustful and lascivious advice. "The defendant George Mewborn had advised and counseled the defendant Marvin Mewborn to indulge in illicit sexual intercourse."

In *S. v. Davenport,* 156 N. C., 596 (614), is the following: "A person aids and abets when he has 'that kind of connection with the commission of a crime which, at common law, rendered the person guilty as a principal in the second degree. It consisted in being present at the time and place, and in doing some act to render aid to the actual perpetrator of the crime, though without taking a direct share in its commission.' Black's Dict., p. 56, citing Blackstone, 34. An abettor is one who gives 'aid and comfort,' or who either commands, advises, instigates, or encourages another to commit a crime—a person who, by being present, by words or conduct, assists or incites another to commit the criminal act (Black's Dict., p. 6); or one 'who so far participates in the commission of the offense as to be present for the purpose of assisting, if necessary; and in such case he is liable as a principal,' citing a wealth of authorities. *S. v. Epps,* 213 N. C., 709 (713-14).

It is stated in *Drum v. Miller,* 135 N. C., 204 (214-15): "In the case of conduct merely negligent, the question of negligence itself will depend upon the further question whether injurious results should be expected to flow from the particular act. The act, in other words, becomes negligent, in a legal sense, by reason of the ability of a prudent man, in the exercise of ordinary care, to foresee that harmful results will follow its commission. The doctrine is thus expressed, and many authorities cited to support it, in 21 A. & E. Ency. Law (2nd Ed.), page 487: 'In order, however, that a party may be liable for negligence, it is not necessary that he should have contemplated, or even been able to anticipate, the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient, if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a general injurious nature might have been expected.' "

In *S. v. Cope,* 204 N. C., 28 (30), citing the *Drum case, supra,* it is said: "Actionable negligence in the law of torts is a breach of some duty imposed by law or a want of due care—commensurate care under the circumstances—which proximately results in injury to another."

We cannot say that defendant George Mewborn, by the immoral advice given his son, could have reasonably foreseen, or expected as the natural and probable consequences, that his son would commit a crime and assault on plaintiff. We cannot hold him on this record for such unnatural and vicious advice. It is not alleged that the defendant George Mewborn participated in the act complained of by the plaintiff, nor do we think it can be said that he aided and abetted, counseled, advised or

encouraged his son in doing the act alleged, that is, committing an assault on plaintiff. The complaint fails to allege that the defendant George Mewborn counseled or advised or encouraged his son to commit an assault on anyone. Nowhere does it allege that this counsel and advice is related to this act, and without connecting the time at which the advice was given to the act itself, we think that it was too remote. It may have been years prior to the act complained of. Where an individual counsels the commission of an act which may be committed either lawfully or unlawfully, it must be presumed that the counsel intended only the lawful act; such counsel and advice, standing alone, is insufficient to make the adviser a party responsible legally for the unlawful act following it. The complaint of this serious charge against the father is taken as true for the purpose of this demurrer, if he had answered the complaint, it may have been another story.

For the reasons given, we think the demurrer below should have been sustained.

Reversed.

STACY, C. J., concurring: The demurrer interposed by the defendant George Mewborn challenges the sufficiency of the facts stated in the complaint to constitute a cause of action against him. C. S., 511, subsec. 6. The gravamen of the complaint, in so far as the demurrant is concerned, is to be found in paragraph 9. The facts stated therein, taken singly or in connection with the other facts set out in the complaint, are not sufficient to constitute a cause of action against the appellant. The demurrer is good, and stays the action as against George Mewborn.

The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated and such relevant inferences of fact as are fairly deducible therefrom, and this without any concession of legal inferences or conclusions of law asserted by the pleader. *Leonard v. Maxwell,* 216 N. C., 89, 3 S. E. (2d), 316. Such admission, however, is only for the purpose of the demurrer, and is not available for any other use. *S. v. Whitehurst,* 212 N. C., 300, 193 S. E., 657. It is axiomatic that unless the conclusion deduced is supported by the facts stated, it is a mere *brutum fulmen. Andrews v. R. R.,* 200 N. C., 483, 157 S. E., 431.

BARNHILL and WINBORNE, JJ., join in this opinion.