ATHLYN B. LANGFORD v. MIDGIE L. SHU.

(Filed 21 November 1962.)

**1. Negligence § 1;    Torts § 1—**

Where a person perpetrates a practical joke on another with the intention of subjecting the victim to fright, and the circumstances are such that injurious consequences are reasonably foreseeable to the victim in his natural attempt to flee, the person perpetrating the joke may be held liable for such injuries notwithstanding that injury was not intended and notwithstanding the absence of hostility.

**2. Negligence § 24a—**

The evidence disclosed that two small boys possessed a box labeled, "Danger, African Mongoose, Live Snake Eater," which box was so contrived that a fox tail would be released by a spring when the lid was opened, and that when plaintiff, a neighbor, came to visit, the boys induced her near the box and suddenly released the fox tail therefrom, causing plaintiff, in attempting to escape what she thought was a live animal, to

stumble against a brick wall, resulting in personal injury. *Held:* Whether injury to plaintiff was reasonably foreseeable under the circumstances is a question for the jury.

**3. Parent and Child § 7—**

A parent is not liable for the torts of the child solely by reason of the relationship, but where the parent participates with the child in the commission of the tort or fails to exercise control over the child under circumstances from which it is reasonably foreseeable that the child will likely inflict injury, the parent may be liable.

**4. Same— Evidence of parent's participation in tort committed by her children held sufficient for jury on question of parent's liability.**

Defendant's small sons were in possession of a box labeled "Danger, African Mongoose, Live Snake Eater," inside of which was a fox tail released by a spring when the lid of the box was opened. The evidence further tended to show that defendant knew of the practical joke, and that when plaintiff, a neighbor, came to visit, helped set the stage for the perpetration of the joke on plaintiff by her answers to plaintiff's questions concerning the box, and stood by while the boys induced plaintiff near the box and sprang the joke, resulting in personal injury to plaintiff in her attempt to flee. *Held:* The evidence permits a finding by the jury that defendant participated in the perpetration of the joke with her boys and knew or should have known that, in the absence of positive action on her part, her children would perpetrate the joke on plaintiff, and therefore defendant's motion to nonsuit should have been overruled.

**5. Negligence § 33—**

Where a visitor is injured as a result of a practical joke, liability for such injury is predicated upon the positive acts of defendant in perpetrating the joke, irrespective of the locale, and therefore the law relating to the condition and use of premises and liability to a licensee or invitee is inapposite.

APPEAL by plaintiff from *Pless, J.,* June 4, 1962 Regular Civil "B" Term of MECKLENBURG.

This civil action to recover damages for personal injuries was dismissed by judgment of nonsuit at the close of the plaintiff's evidence. That ruling presents the only question on appeal.

Plaintiff and defendant are next door neighbors. On the afternoon of March 11, 1961, Mrs. Langford, the plaintiff, came to visit Mrs. Shu, the defendant. As was her custom, she came by way of the backyard. Mrs. Shu was busy in the kitchen and plaintiff entered the house through the screened back porch. As she entered, to her left on the porch was a picnic table with two benches, a chair and a lounge; on her right was a wicker couch. Beside the couch was a doorway into the kitchen. The furniture arrangement did not leave much "walking space" on the porch. When plaintiff entered the porch she saw on the picnic table a wooden box which was labeled "Danger, African Mon-

goose, Live Snake Eater." Plaintiff walked past the box into the kitchen and said to Mrs. Shu, "What in the world have you got on the back porch?" Defendant told her that it was a mongoose which a man had given to her husband for their children. Mrs. Langford then asked defendant what she was going to feed it and the reply was, "It eats snakes." Plaintiff and defendant had previously "discussed snakes, bugs, and so forth," and plaintiff had told defendant that she was afraid of them. Defendant told plaintiff to look at the box; that it would not hurt her.

The two Shu children, boys aged nine and eleven years respectively, were in the next room. Hearing this conversation between their mother and Mrs. Langford, and realizing that plaintiff had not seen "the box demonstrated," they came eagerly into the kitchen. The mongoose was in reality only a fox tail. Mrs. Shu, who was called as plaintiff's first witness, testified: "In order to show the box to someone, you have them standing at that end of the box, that is, the end of the box with the wire mesh over it. . . . (T)he lever is released with a spring, and it swings open and that is when it comes out."

The defendant's boys urged plaintiff to go out on the porch and look at the mongoose. Plaintiff declined to get near the box because she was afraid of snakes. When she started to go home she stopped in the kitchen door four to five feet from the box, still refusing "to get near that thing." Steve, the older boy, had been poking into the box with a stick which he then held in his hand. Plaintiff cautioned him not to hold that portion of the stick which had been in the box because "it was dirty down in the box where the animals and snakes were." About that time Steve released the spring on the box. With a whoosh and a screech, a furry object, which plaintiff believed to be an animal, sprang out at her. She jumped back and turned to run. There was so little room on the porch that she hit the lounge and stumbled back into a brick wall of the house, tearing a cartilage in her left knee. After extensive and painful treatments were ineffectual, an operation was required to repair the damage. Plaintiff spent sixty-three days in the hospital, endured much suffering and inconvenience, and incurred medical bills in the sum of $2,219.88.

According to the plaintiff, Mrs. Shu had stepped out on the porch at the time Steve released "the mongoose." According to Mrs. Shu, she was still in the kitchen, only a step from the porch, but she could hear the conversation between the children and Mrs. Langford. Defendant stepped out and saw "the mongoose" as it came out of the box in front of plaintiff.

*McDougle, Ervin, Horack & Snepp and C. Eugene McCartha for*

*plaintiff, appellant.*
   Boyle, Alexander & Wade for defendant, appellee.

SHARP, J.   This case involves a practical joke which caused unintended injury. However, the fact that it is a practical joke which is the cause of an injury does not excuse the perpetrator from liability for the injuries sustained. 52 Am. Jur., Torts, Sec. 90; 86 C.J.S., Torts, Sec. 20. Where voluntary conduct breaches a duty and causes damage it is tortious although without design to injury. 62 C.J., Torts, Sec. 22.

If an act is done with the intention of bringing about an apprehension of harmful or offensive conduct on the part of another person, it is immaterial that the actor is not inspired by any personal hostility or the desire to injure the other. See Annotation, Right of Victim of Practical Joke to Recover Against its Perpetrator, 9 A.L.R. 364.

In *Johnston v. Pittard et al,* 62 Ga. App. 550, 8 S.E. 2d 717, six defendants, as a practical joke, persuaded plaintiff to go with them to a house in the country to see "some wild women." When they arrived at their destination, a vacant farm house, a man yelled from within and two shots were fired in plaintiff's direction. He "ran in desperation and fear of his life and fell into a ditch as a result of which he sustained injuries." The Court of Appeals, in ordering a new trial after verdict for the defendants, held that the defendants would be liable if they should have foreseen that injurious consequences to the plaintiff were the natural and probable result of their conduct and that this was a question for the jury.

In *Lewis v. Woodland et al,* 101 Ohio App. 442, 140 N.E. 2d 322, plaintiff sought damages for a back injury which occurred while she was a guest in the automobile of the defendant Jones when she jumped with fright after defendant Woodland dropped a life-like rubber lizard in her lap. She alleged that the act of Woodland was the result of a preconceived plan of both defendants to frighten her and cause her to react suddenly and violently. The jury returned a verdict in favor of the plaintiff against both defendants. The court ruled that "the question of foreseeability of the consequences of the defendants' perpetration of a joke was properly for consideration by the jury. . . ." In the syllabus by the court it is said:

> "Where a person's conduct is such as to frighten or cause an emotional disturbance to another, which the former should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely from the internal operation of the fright does not protect the former from liability.

"Once it is shown that a person charged with frightening an-
other should have anticipated that some injury would likely result
from his conduct, . . . responsibility attaches for all consequences
naturally resulting from the former's conduct . . . although it
might not have been specifically contemplated or anticipated."

The defendant in the instant case owed to the plaintiff the duty
not to subject her to a fright which, in the exercise of due care or
reasonable foresight, she should have known was likely to result in
some injury to her. *Kirby v. Stores Corp.*, 210 N.C. 808, 188 S.E. 625.
Restatement of Torts, 1177, Sec. 436; *Lewis v. Woodland, supra.* The
purpose of the box labeled "Danger, African Mongoose, Live Snake
Eater" was to produce sudden fright and to cause the affrighted person
to recoil violently. The degree of fright generated would depend upon
the fortitude of the individual victim.

Had the defendant herself demonstrated the box and sprung the
trap which released the fake mongoose, there is no doubt that it would
be for the jury to say whether or not she should have reasonably
foreseen that some injury might result to the plaintiff from the
perpetration of her joke. The question now arises whether the defend-
ant is liable for the act of her eleven-year-old boy who released the
furry object which frightened plaintiff into precipitous flight and
caused her injury.

North Carolina is in full accord with the common-law rule that
the mere relation of parent and child imposes on the parent no liability
for the torts of the child. The parent is not liable merely because the
child lives at home with him and is under his care and control. Apart
from the parent's own negligence, liability exists only where the
tortious act is done by the child as the servant or agent of the parent,
or where the act is consented to or ratified by the parent. A parent
is liable for the act of his child if the parent's conduct was such as
to render his own negligence a proximate cause of the injury com-
plained of. In such a case the parent's liability is based on the ordinary
rules of negligence and not upon the relation of parent and child. 39
Am. Jur., Parent and Child, Sec. 55. Furthermore, "a parent may be
liable for the consequences of failure to exercise the power of control
which he has over his children, where he knows, or in the exercise of
due care should have known, that injury to another is a probable
consequence. . . . Failure to restrain the child, it is said, amounts to a
sanction of or consent to his acts by the parent. . . . (A)s in all negli-
gence cases, the issue in the last analysis is whether the parent
exercised reasonable care under all the circumstances. . . ." 39 Am. Jur.,
Parent and Child, Sec. 58; See also 67 C.J.S., Parent and Child, Sec.
68.

In *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598, this Court in an opinion by *Bobbitt, J.* fully considered the liability of parents for the torts of their child. In that case the parents had entrusted their nine-year-old son with an air rifle with which he injured the plaintiff. There was evidence that the mother knew the boy had shot at others before; there was no evidence that the father knew this. In sustaining a verdict against the mother, the Court said that a parent was negligent, and therefore liable, if under the circumstances he "could and should, by the exercise of due care, have reasonably foreseen that the boy was likely to use the air rifle in such manner as to cause injury, and failed to exercise reasonable care to prohibit, restrict or supervise his further use thereof."

Defendant in this case set the stage for her children's prank; she aided and abetted it by her answers to the plaintiff's questions about the box. Defendant had seen the box demonstrated and she knew, as only the mother of boys aged nine and eleven could know, that unless she took positive steps to prevent it, they would not let such a wary and apprehensive prospect as Mrs. Langford escape without a demonstration. To reach any other conclusion would be to ignore the propensities of little boys who, since the memory of a man runneth not to the contrary, have delighted to stampede timorous ladies with snakes, bugs, lizards, mice and other rewarding small creatures which hold no terror for youngsters. It is implicit in this evidence that defendant expected to enjoy the joke on her neighbor as much as the children, and that she participated in the act with them. To say that she should not have expected one of the boys to spring "the mongoose" on plaintiff would strain credulity.

Defendant contends that the plaintiff, when she came visiting, was a mere licensee, *Murrell v. Handley*, 245 N.C. 559, 96 S.E. 2d 717, and that defendant owed plaintiff no duty to keep her premises in a safe and suitable condition for callers. Suffice it to say that plaintiff's injuries did not arise from any defect or condition of the premises. They were not due to passive negligence or acts of omission. *Pafford v. Construction Co.*, 217 N.C. 730, 9 S.E. 2d 408. Plaintiff's status as a licensee is immaterial to the decision of this case.

Taken in the light most favorable to the plaintiff the evidence would permit the jury to find that defendant approved and participated in the practical joke her children played on the plaintiff; that defendant knew plaintiff was afraid of snakes and of the contents of the box which defendant had told her contained a mongoose which ate live snakes; that in the exercise of due care defendant could have reasonably foreseen that if a furry object came hurtling from the box toward plaintiff she would become so frightened that she was likely to

do herself some bodily harm in headlong flight. In our opinion, and we so hold, the evidence makes out a case for the jury.

The judgment of the court below is reversed.

Reversed.