ALICE MOORE v. JOHN C. CRUMPTON, CAROL CRUMPTON AND JOHN C. CRUMPTON, JR.

No. 8115SC369

(Filed 19 January 1982)

1. **Parent and Child § 8— liability of parents for wrongful acts of child**

Parents cannot be held liable in negligence for the wrongful acts of their unemancipated children unless (1) there is an agency relationship; (2) the parent has directly aided, abetted, solicited, or encouraged the wrongful act; or (3) the parent has entrusted the child with a dangerous instrumentality which was used to cause the injury.

2. **Parent and Child § 8— child's rape of plaintiff—use of alcohol and drugs—no liability of parents to plaintiff**

   Defendants, the parents of a minor who raped the plaintiff after he had used alcohol and drugs, were not under a duty to control and supervise the minor so as to foreclose his use of drugs or alcohol or to foreclose any risk of his harming others, and defendants were not liable in damages to plaintiff for their son's rape of plaintiff where defendants did not participate in any respect in the son's injury to plaintiff, he was not their agent, they did not aid, abet, encourage or solicit his rape of plaintiff, and they did not provide him with the means by which he accomplished it.

   Judge MARTIN (Harry C.) concurring in the result.

APPEAL by plaintiff from *Bailey, Judge.* Summary judgment entered 18 November 1980 in Superior Court, ORANGE County. Heard in the Court of Appeals 18 November 1981.

Plaintiff initiated these personal injury actions alleging that defendant John C. Crumpton, Jr. intentionally assaulted and raped her at knifepoint, and that defendants John C. Crumpton and Carol Crumpton, parents of defendant John C. Crumpton, Jr., were negligent in failing to use reasonable care to control and supervise their son. After reviewing the pleadings, supporting affadavits, depositions, and various exhibits, the trial court granted summary judgment in favor of defendants John C. Crumpton and Carol Crumpton. Plaintiff appeals.

*Epting, Hackney & Long, by Lunsford Long, for plaintiff-appellant.*

*Newsom, Graham, Hedrick, Murray, Bryson and Kennon, by Robert B. Glenn, Jr., and James L. Newsom, for defendant-appellees.*

WELLS, Judge.

The essential allegations as to the negligence of John and Carol Crumpton are as follows:

III. [D]efendant, John C. Crumpton, Jr. was the unemancipated minor child of defendants John C. Crumpton and Carol Crumpton, and John C. Crumpton and Carol Crumpton had the ability to exercise reasonable care in the supervision and control of their minor child John C. Crumpton, Jr.

IV. [F]or some time prior to June 28, 1978 by reason of acts and statements of defendant John C. Crumpton, Jr. involving

illegal drug usage and deadly weapons, of which defendants John C. Crumpton and Carol Crumpton were aware, defendants John C. Crumpton and Carol Crumpton knew or had reason to know that defendant John C. Crumpton, Jr. was possessed of a dangerous disposition, mental state and personality so as to make it foreseeable that he would intentionally injure others unless reasonable care in his control and supervision were exercised by John C. Crumpton and Carol Crumpton.

V. By reason of the matters and things hereinabove alleged, defendants John C. Crumpton and Carol Crumpton, on June 28, 1978, had a legal duty to exercise reasonable care to control and supervise their minor child, defendant John C. Crumpton, Jr. so as to prevent him from intentionally injuring others.

VI. [I]n breach of such duty as hereinabove alleged, on the night of June 27 and in the early morning of June 28, 1978 defendants John C. Crumpton and Carol Crumpton negligently failed to exercise reasonable care in the control and supervision of their minor son defendant John C. Crumpton, Jr. in that they failed to prevent his having access to and using illegal drugs and deadly weapons, and failed to prevent him from going abroad alone and unsupervised in the nighttime after having used such alleged drugs and after having gained possession of such a deadly weapon.

. . .

The materials before the trial court tell the story of a modern American family tragedy. John Crumpton, Jr., one of five children born to the marriage of John and Carol Crumpton, was born with a club foot and in early childhood experienced other health problems: hypoglycemia, diabetes, and ulcerative colitis. His family life was apparently comfortable and secure, and it appears that during his childhood and early adolescence, John Jr.'s relationship with his parents and grandparents involved regular hunting, fishing and golfing outings and frequent trips to the beach. Despite his supportive environment, John, Jr. began using marijuana at an early age, and was a regular user of various illegal drugs by the time he was thirteen years old. Although John, Jr.'s parents were aware of his use of drugs and attempted by

various means to discourage such habits, he persisted in his drug habit, earning money to purchase drugs from various part-time jobs. John, Jr. frequently skipped school, got into arguments with his parents, once struck his mother, was hospitalized once for a drug overdose, was arrested once for carrying a concealed weapon (a knife), and impregnated a young girl. This tragic history of drug addiction and rebellious behavior culminated in his rape of the plaintiff and his conviction of and imprisonment for that crime.

Prior to the rape, John, Jr. possessed a number of hunting knives and guns given to him by his parents. His parents did not know that he possessed the thirteen-inch stiletto that he used in the rape. His parents kept alcoholic beverages at home, to which John, Jr. had access. The pint of bourbon whiskey he drank on the night of the rape was obtained at a friend's house. In May, 1978, Carol Crumpton separated from her husband and moved to a separate address. By agreement, Mrs. Crumpton took the couple's three youngest children to live with her, while her husband continued to have custody of John, Jr. and his twin sister. Carol Crumpton was on vacation at the beach on 28 June 1978. Prior to 28 June 1978, John Crumpton finalized plans for a vacation in Hawaii. Before leaving home, he made arrangements for John, Jr. to visit with his grandparents, and delivered John, Jr. to their home near Roxboro. After his father left him in Roxboro, John, Jr. returned to Chapel Hill, and on the night of 28 June 1978, he drank a large amount of whiskey, took drugs, got "high" and carried out his rape of plaintiff.

The history of John, Jr.'s problems reflects the response of concerned parents. When John, Jr. was nine, problems associated with his physical infirmities led his parents to consult a child psychologist. As John, Jr.'s drug and school problems emerged in junior high school, his parents sought the help of school guidance counselors and various mental health professionals. They frequently remonstrated with John, Jr. and attempted to discipline him. In an effort to remove him from his harmful home-town environment, they sent him away to a private high school for the tenth grade, where he performed well. He was sent back for the eleventh grade, but he refused to stay and returned home early in that school year. In addition to other mental health professionals who counseled John, Jr. and his parents, he was treated

by John A. Gorman, Ph.D., a clinical psychologist, and Landrum S. Tucker, Jr., M.D., a psychiatrist. Dr. Gorman saw John, Jr. on six occasions during the period May through October, 1975. Dr. Tucker saw John, Jr. on five occasions in January and February, 1978, during which time he also reviewed John, Jr.'s psychological testing. Both Dr. Gorman and Dr. Tucker indicated that although John, Jr. required continued treatment, he was not disposed toward violent or dangerous behavior and that he was not a person who should or could be involuntarily committed. John, Jr. broke off his counseling with both Dr. Gorman and Dr. Tucker. His parents either could not or did not require him to continue treatment.

To answer the principal issue in this appeal, we must review the law of North Carolina as it relates to the liability of parents for the torts of their unemancipated children. We first note that there is no statute bearing upon the issue of liability in this case, and it is therefore to the common law which we must look for answers.

We begin our analysis with *Brittingham v. Stadiem*, 151 N.C. 299, 66 S.E. 128 (1909). Plaintiff's injury resulted from a pistol wound inflicted by defendants' son, who was employed in defendants' store. In allowing recovery for plaintiff on the basis of the agency of defendants' son, Justice Manning, speaking for the Court, stated the general rule as follows:

> Relationship does not alone make a father answerable for the wrongful acts of his minor child. There must be something besides relationship to connect him with such acts before he becomes liable. It must be shown that he approved such acts, or that the child was his servant or agent. (Citations omitted) Wherever the principles of the common law prevail, this is the well-established doctrine.

*See also Linville v. Nissen*, 162 N.C. 95, 77 S.E. 1096 (1913), (where Chief Justice Clark restates the above quoted rule in *Brittingham*). *See also Robertson v. Aldridge*, 185 N.C. 292, 116 S.E. 742 (1923) and *Hawes v. Haynes*, 219 N.C. 535, 14 S.E. 2d 503 (1941), (early automobile family purpose doctrine cases, in which the restatement in *Linville*, supra, of the *Brittingham*, supra, rule is approved by the Court.)

In *Taylor v. Stewart,* 172 N.C. 203, 90 S.E. 134 (1916) the defendant-father regularly allowed his thirteen year old son to operate the father's automobile. While driving his father's automobile, the boy struck and killed plaintiff's son. In allowing recovery against the father, the Court affirmed the *Linville,* supra, restatement of the *Brittingham,* supra, rule and held that the father himself was negligent in allowing the thirteen-year-old to operate the car.

In *Lane v. Chatham,* 251 N.C. 400, 111 S.E. 2d 598 (1959), plaintiff was injured when defendants' minor son shot plaintiff in the eye with an air rifle. The defendant-mother knew that the boy had previously shot three people with the air rifle. The Court allowed recovery against the mother, stating the rule in that case as follows:

> The applicable rule is this: Where parents entrust their nine-year old son with the possession and use of an air rifle and injury to another is inflicted by a shot intentionally or negligently discharged therefrom by their son, the parents are liable, *based on their own negligence,* if under the circumstances they could and should, by the exercise of due care, have reasonably foreseen that the boy was likely to use the air rifle in such manner as to cause injury, and failed to exercise reasonable care to prohibit, restrict or supervise his further use thereof.

Earlier in its opinion, the Court cited and relied upon both *Brittingham,* supra, and *Taylor,* supra, but in its discussion, also included the following statements:

> In the Restatement of the Law of Torts, § 316, the general rule is stated as follows: "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control."

> To impose liability upon the parent for the wrongful act of his child (absent evidence of agency or of the parent's par-

ticipation in the child's wrongful act), for which the child, if *sui juris*, would be liable, it must be shown that the parent was guilty of a breach of legal duty, which concurred with the wrongful act of the child in causing the injury. "A parent is liable if his negligence combines with the negligence of the child and the two contribute to injury by the child." 67 C.J.S., Parent and Child § 68.

In *Grindstaff v. Watts*, 254 N.C. 568, 119 S.E. 2d 784 (1961) the plaintiff sought to extend the family purpose doctrine to the operation of motorboats. A verdict was returned against the minor son, who was the operator, but the father-owner's motion for nonsuit was allowed. In affirming the nonsuit as to the father and declining to extend the family purpose doctrine to the operation of boats,[1] the Court stated and applied the general rule of parental liablity as follows:

"At common law it is well established that the mere relation of parent and child imposes on the parent no liability for the torts of the child. . . ." 67 C.J.S., Parent and Child, s. 66, p. 795. "Relationship does not alone make a father answerable for the wrongful acts of his minor child. There must be something besides relationship to connect him with such acts before he becomes liable. It must be shown that he approved such acts, or that the child was his servant or agent." *Brittingham v. Stadiem*, 151 N.C. 299, 300, 66 S.E. 128. "To impose liability upon the parent for the wrongful act of his child (absent evidence of agency or of the parent's participation in the child's wrongful act), for which the child, if *sui juris*, would be liable, it must be shown that the parent was guilty of a breach of legal duty, which concurred with the wrongful act of the child in causing the injury. 'A parent is liable if his negligence combines with the negligence of the child and the two contribute to injury by the child.' 67 C.J.S., Parent and Child, s. 68." *Lane v. Chatham*, 251 N.C. 400, 402, 111 S.E. 2d 598.

In the case at bar there is no showing that the boat was structurally or mechanically defective, that the son was inex-

---

1. We note that the 1959 enactment of G.S. 75A-10.1 has made the family purpose doctrine applicable to the operation of motorboats.

perienced in the operation of the craft or was on any prior occasion reckless or irresponsible in its operation, or that the son was on any mission or engaged in any business for his father at the time of the accident. Therefore, the evidence is insufficient to impose liability on the father under the common law rule.

In *Langford v. Shu*, 258 N.C. 135, 128 S.E. 2d 210 (1962), plaintiff was injured as a result of a practical joke carried out by defendant's minor children. In holding defendant liable because she set the stage for her children's prank and therefore aided and abetted them, the Court stated the rule of parental liability as follows:

> North Carolina is in full accord with the common law rule that the mere relation of parent and child imposes on the parent no liability for the torts of the child. The parent is not liable merely because the child lives at home with him and is under his care and control. Apart from the parent's own negligence, liability exists only where the tortious act is done by the child as the servant or agent of the parent, or where the act is consented to or ratified by the parent. A parent is liable for the act of his child if the parent's conduct was such as to render his own negligence a proximate cause of the injury complained of. In such a case the parent's liability is based on the ordinary rules of negligence and not upon the relation of parent and child. 39 Am. Jur., Parent and Child, Sec. 55. Furthermore, "a parent may be liable for the consequences of failure to exercise the power of control which he has over his children, where he knows, or in the exercise of due care should have known, that injury to another is a probable consequence. . . . Failure to restrain the child, it is said, amounts to a sanction of or consent to his acts by the parent. . . . (A)s in all negligence cases, the issue in the last analysis is whether the parent exercised reasonable care under all the circumstances. . . ." 39 Am. Jur., Parent and Child, Sec. 58; See also 67 C.J.S., Parent and Child, Sec. 68.

*Insurance Co. v. Faulkner*, 259 N.C. 317, 130 S.E. 2d 645 (1963) was an action for damages under G.S. 1-538.1 for malicious or wilful destruction of property by minors. Justice (later Chief Justice) Parker, speaking for the Court, stated the general rule of parental liability as follows:

At common law, with which our decisions are in accord, the mere relationship of parent and child was not considered a proper basis for imposing vicarious liability upon the parent for the torts of the child. *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598. Parental liability for a child's tort at common law was imposed generally in two situations, i.e., where there was an agency relationship, or where the parent was himself guilty in the commission of the tort in some way. *Lane v. Chatham*, supra; *Hawes v. Haynes*, 219 N.C. 535, 14 S.E. 2d 503; Strong's N.C. Index, Vol. 3, Parent and Child, sec. 7; 67 C.J.S., Parent and Child, secs. 67 and 68.

In *Smith v. Simpson*, 260 N.C. 601, 133 S.E. 2d 474 (1963), the Court, declining to extend the family purpose doctrine to include an automobile titled to the father but beneficially owned and controlled by the son, stated the rule of parental liability as follows:

"The mere fact of the relationship does not render a parent liable for the torts of his child. Liability of the parent must be predicated upon evidence that the child was in some way acting in a representative capacity such as would make the master responsible for the servant's tort, or on the ground that the parent procured, commanded, advised, instigated or encouraged the commission of the tort by his child, or that the parent was independently negligent, as in permitting the child to have access to some dangerous instrumentality." 3 Strong: N.C. Index, Parent and Child, s. 7, p. 529; *Insurance Co. v. Faulkner*, 259 N.C. 317, 130 S.E. 2d 645; *Langford v. Shu*, 258 N.C. 135, 128 S.E. 2d 210; *Griffin v. Pancoast*, supra; *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598; *Hawes v. Haynes*, 219 N.C. 535, 14 S.E. 2d 503; *Bowen v. Mewborn*, 218 N.C. 423, 11 S.E. 2d 372. . . .

*See also Pleasant v. Insurance Co.*, 280 N.C. 100, 185 S.E. 2d 164 (1971).

In *Patterson v. Weatherspoon*, 17 N.C. App. 236, 193 S.E. 2d 585 (1972), plaintiff was injured when struck by a golf club swung by defendant's eight year old son. The trial court allowed defendant's motion to dismiss under G.S. 1A-1, Rule 12(b)(6). In reversing the trial court, this Court stated the rule as follows:

[W]hile the relationship alone does not make a father answerable for the wrongful acts of his minor child, a father

Moore v. Crumpton

who is aware, or by the exercise of due care should be aware of the dangerous propensities of his child in the use of the instrumentality and who fails to prohibit, restrict or supervise the child in the use thereof, may be liable based on his own negligence for injury to another caused by the child's misuse of the instrumentality. *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598 (1959).

In *Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974), plaintiff's minor son was injured when struck by a forklift being operated by defendant's eleven year old son. The evidence showed that defendant had previously allowed his son to operate the lift and that on the occasion of the injury it was being operated by the son with the father's knowledge, permission, and direction. In allowing recovery against the father, the Court found that a forklift is a dangerous instrumentality in the hands of a person who lacks the ability to operate it safely; hence, the father was independently negligent in entrusting its operation to his son.

[1] Our review of the decisional law of North Carolina convinces us that parents cannot be held liable in negligence for the wrongful acts of their unemancipated children unless (1) there is an agency relationship; (2) the parent has directly aided, abetted, solicited, or encouraged the wrongful act; or (3) the parent has entrusted the child with a dangerous instrumentality, the use of which caused the injury. Despite the "control" *dicta* in *Langford* and *Lane*, supra, in every case in which parental liability has attached, some additional act of parental negligence has formed the basis of liability.

[2] Tragic as these events were for all concerned, we cannot say that John, Jr.'s parents were under a duty to control and supervise him so as to foreclose his use of drugs or alcohol or to foreclose any risk of his harming others. Plaintiff's forecast of evidence does not show that defendants participated in any respect in John, Jr.'s injury to plaintiff. He was not their agent; they did not aid, abet, encourage, or solicit his rape of plaintiff; and they did not provide him with the means by which he accomplished it.

Although we recognize and re-emphasize the general rule that summary judgment should rarely be applied in negligence cases, *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d

419 (1978); *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975); *Durham v. Vine*, 40 N.C. App. 564, 253 S.E. 2d 316 (1979), the forecast of evidence in this case shows no basis upon which plaintiff may maintain an action in negligence against defendants Carol Crumpton and John Crumpton, and they were therefore entitled to judgment as a matter of law.

The judgment of the trial court is

Affirmed.

Judge ARNOLD concurs.

Judge MARTIN (Harry C.) concurs in the result.

Judge MARTIN (Harry C.) concurring in the result.

I agree with the result reached by Judge Wells in holding that the summary judgment in favor of defendants John C. Crumpton and Carol Crumpton should be affirmed. Carol Crumpton separated from John Crumpton in May 1978 and moved out of the house. John Crumpton, Jr. and his sister, Kimberly, continued to live at home with their father. The three other children were with Carol. From May 1978 until the rape on 28 June 1978, Carol Crumpton did not have day-to-day custody and control of John, Jr. She had neither the power nor the duty during this time period to exercise control over him. On the night in question, she was at the beach, far removed from Chapel Hill. The materials presented at the summary judgment hearing fail to disclose any evidence of negligence by Carol Crumpton. *Langford v. Shu*, 258 N.C. 135, 128 S.E. 2d 210 (1962); *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598 (1959).

As to the claim against John Crumpton, the materials before the court on the motion for summary judgment fail to support a finding that he was actionably negligent. There was no evidence that a sexual assault by John, Jr. was foreseeable. Although John, Jr.'s propensities toward aberrant behavior were all too well known to his father, there is no indication from the record that the child had exhibited any propensity for acts similar to that now under consideration. In *Bowen v. Mewborn*, 218 N.C. 423, 11 S.E. 2d 372 (1940), on facts more compelling than in the present

case, the Court held upon demurrer that the allegations failed to establish the foreseeability of the son's actions. In that case the defendant father had actually encouraged his son to engage in illicit intercourse, and the son thereafter committed a sexual assault on the plaintiff. There was no evidence that the "unnatural and vicious advice" was given close enough in time to the act to establish a cause and effect relationship. Although foreseeability is an element of proximate cause, it does not import that the particular injury should have been foreseeable, but does require that consequences of a generally injurious nature might have been expected. *White v. Dickerson, Inc.*, 248 N.C. 723, 105 S.E. 2d 51 (1958). In order to survive the motion for summary judgment, plaintiff must present a forecast of evidence to support a finding that the result in question was reasonably foreseeable as a proximate result of negligent conduct. *Bowen, supra.* This she failed to do.

The majority opinion would eliminate the negligent failure of a parent to exercise reasonable control over a child as a basis for recovery against such parent. In this I cannot concur. The law is well settled in North Carolina that a parent may be liable in damages for failure to exercise the power of control which he has over his children where he knows, or in the exercise of due care should know, that injury to another is a probable consequence. In the last analysis, the test is whether the parent exercised reasonable care under all the circumstances. *Langford, supra; Lane, supra.* This is also the general rule in the United States. *See* Restatement of Torts 2d § 316 (1965); 67A C.J.S. Parent & Child § 125 (1978); 59 Am. Jur. 2d Parent and Child § 133 (1971); 155 A.L.R. 85 (1945).

In short, the law may impose liability upon a parent for harm proximately caused by negligence of the parent in failing to exercise proper control over his child, but in the present case, plaintiff has failed to carry the burden in response to the summary judgment motion.